GROB BROTHERS, A PARTNERSHIP, PETITIONER, *v.* SECRETARY OF WAR OF THE UNITED STATES, RESPONDENT.

Docket No. 58–R.   Promulgated September 30, 1947.

*Richard C. Bonner, Esq.*, and *Ralph E. Houseman, Esq.*, for the petitioner.

*Frederick N. Curley, Esq.*, and *Robert H. Winn, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge*: The constitutionality of the Renegotiation Act was considered and discussed at length by this Court in *Stein Brothers Manufacturing Co.*, 7 T. C. 863, and *Ring Construction Corpora-*

*tion,* 8 T. C. 1070. On the facts and arguments presented in those cases we held that the act is constitutional. In the case at bar the petitioner has challenged its constitutionality on several grounds, all of which were presented, considered, and discussed in *Stein Brothers Manufacturing Co., supra,* and *Ring Construction Corporation, supra.* The petitioner has suggested no new theories nor advanced any new grounds for supporting its contention. In *Spalding* v. *Douglas Aircraft Co.,* 154 Fed. (2d) 419, the court also passed on similar questions relating to the constitutionality of the act and declared that it violated no constitutional provisions. We see no reason to depart from our conclusions in the *Stein* and *Ring* cases and, therefore, hold that the petitioner has failed to show that the Renegotiation Act is unconstitutional.

The petitioner next presents the issue that it had no contracts or subcontracts with the Departments amounting to $100,000. The statutory definition of a subcontract is found in section 403 (a) (5) (i) and is as follows:

SEC. 403 (a). For the purposes of this section—

\*      \*      \*      \*      \*      \*      \*

(5) The term "subcontract" means

.(i) any purchase order or agreement to perform all or any part of the work or to make or furnish any article required for the performance of any other contract or subcontract.

\*      \*      \*      \*      \*      \*      \*

The petitioner maintains that it had no subcontracts for war work and challenges the existence of a "purchase order or agreement" defined in the statute to be a subcontract. However, the petitioner stipulated that during the period from April 29 to December 31, 1942, it had made sales amounting to $48,553.19 to the Defense Plant Corporation and that the balance of the total sales of $450,567.31 made therein (or $402,014.12) represented "sales made to private concerns wherein the end use was designated by the purchaser as being either for the Army or Navy."

There is no question that the phraseology used meant that the articles furnished by the petitioner were required for the performance of a conract or subcontract with the Army or Navy. Otherwise, there would have been no reason to incorporate that language in the stipulation. Notwithstanding the stipulation, the petitioner seeks to place on the respondent the burden of producing formal orders or agreements supporting the sales. This the respondent was not required to do. The burden of proof rested on petitioner.

The intent of Congress patently was to limit profits derived from war production by prime contractors and subcontractors. The statu-

tory definition of a subcontract is extremely broad. It contains no requirement of the manner of making a purchase order or agreement or the form which such obligation must take. The petitioner sold its products understanding that they were destined for war-end use. By the terms of its stipulation, the petitioner thus brought itself within the purview of the statute.

The petitioner points to the rejection of its application for a certificate of necessity as proof that it was not a subcontractor. Many factors may conceivably have entered into the action of the War Department (taken, incidentally, on January 7, 1944, long after the period at issue), pursuant to a statute unrelated to the Renegotiation Act and under conditions not set forth in the record. We do not see its pertinence to the issue at hand.

The petitioner asserts that it made no excessive profits and that, in any event, the respondent failed to consider various pertinent factors in making the determination. The petitioner had profits subject to renegotiation in the amount of $113,955.35. The respondent found petitioner's profits excessive by $70,000. Our question is, Has petitioner shown this to be erroneous?

The Court said in the *Stein* case:

\* \* \* Congress, in section 403 (c) (3), indicated some guides to be used. Factors deemed relevant were already known by Congress to be in use in voluntary renegotiations when the act here in question was enacted. The Secretaries directed the renegotiating authorities to use those same factors and their use as to subsequent years was later required by an amendment to the Renegotiation Act. See section 403 (a) (4) (A) as provided in section 701 of the Revenue Act of 1943. They are the factors which any reasonable person would naturally use in determining the amount of excessive profits. \* \* \*

These factors are as follows:

(i) efficiency of contractor, with particular regard to attainment of quantity and quality production, reduction of costs and economy in the use of materials, facilities, and manpower;

(ii) reasonableness of costs and profits, with particular regard to volume of production, normal prewar earnings, and comparison of war and peacetime products;

(iii) amount and source of public and private capital employed and net worth;

(iv) extent of risk assumed, including the risk incident to reasonable pricing policies;

(v) nature and extent of contribution to the war effort, including inventive and developmental contribution and cooperation with the Government and other contractors in supplying technical assistance;

(vi) character of business, including complexity of manufacturing technique, character and extent of subcontracting, and rate of turn-over;

(vii) such other factors the consideration of which the public interest and fair and equitable dealing may require, which factors shall be published in the regulations of the Board from time to time as adopted.

We also said in the *Stein* case:

Section 403 (c) (3) of the Renegotiation Act, applicable hereto, provides for recognition of deduction allowed for income tax purposes. A partnership is not allowed any deduction for income tax purposes on account of compensation of active partners, but the renegotiating authorities have recognized that allowance should be made for reasonable compensation for services actually rendered by them. * * *

Appreciating fully the inherent difficulties of the burden placed on the petitioner in these cases, we are nonetheless limited in our considerations by the proof adduced. The burden of proof rests on the petitioner and our decision is circumscribed by the record made.

The record is convincing that in Benjamin Grob the petitioner partnership enjoyed the services of a man whose value to the firm and, consequently, whose contribution to its success and to the war effort were not adequately compensated by the salary of $10,000. This fact reduced petitioner's costs. *E contra*, had adequate recognition been given to this fact, petitioner's proper costs would have been greater and the amount of profits subject to renegotiation would have been less. This modest amount was in line with the petitioner's policy of leaving the profits in the business. It did not fix the amount of Grob's contribution. The sum of $25,000 would have been a reasonable allowance in lieu of salary for the full year 1942 and should have been used in the computation incident to renegotiation.

All of the factors prerequisite to forming a judgment, such as amount and source of capital employed, percentage of profits, return of investment, and similar elements have been weighed and tested as best we can with the record marked by paucity of specific proof. It will be conceded that petitioner did a good job and contributed substantially to the war effort. Such a concession, however, is not enough. The proof must be such as to bring to this Court a conviction that respondent has not dealt fairly with the petitioner, i. e., that his determination is not justified by the facts.

We have found that the sum of $25,000 would have been a reasonable allowance in lieu of salary for Benjamin Grob for the entire year 1942. An allocable part of this sum was chargeable to renegotiable business. Total sales of petitioner for 1942 amounted to $635,130.79. Sales subject to renegotiation amounted to $402,014.12. Applying the ratio existing between these two sales figures to $15,000 (the increase found by us in the salary allowance) results in the sum of $9,494.44. The net result is that petitioner's profits were excessive in the amount of $60,505.56.

Reviewed by the Court.

*An order will issue in accordance herewith.*

LeMire, *J.*, concurs only in the result.