FRED G. GREAVES AND HAROLD W. OLSON, PARTNERS, DOING BUSINESS AS FRED G. GREAVES COMPANY, PETITIONERS, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket No. 195–R.    Promulgated May 18, 1948.

*H. B. Jones, Esq., H. B. Jones, Jr., Esq.,* and *A. R. Kehoe, Esq.,* for the petitioners.

*Wm. V. Crosswhite, Esq.,* and *Ralph G. Cornell, Esq.,* for the respondent.

OPINION.

HARLAN, *Judge*: The first contention of petitioners is that the Renegotiation Act as applied to them is unconstitutional. They make no argument in support of this contention, and this and other courts have consistently held to the contrary. *Stein Bros. Manufacturing Co.* v. *Secretary of War*, 7 T. C. 863; *Ring Construction Corporation* v. *Secretary of War*, 8 T. C. 1070; *Spaulding* v. *Douglas Aircraft Co.*, 154 Fed. (2d) 419; *United States* v. *Lichter*, 68 Fed. Supp. 19; affd., 160 Fed. (2d) 329; certiorari granted, 331 U. S. 802; *United States* v. *Pownall*, 65 Fed. Supp. 147; affd., 159 Fed. (2d) 73; certiorari granted, 331 U. S. 802; *United States* v. *Alexander Wool Combing Co.*, 66 Fed. Supp. 389; affirmed per curiam, 160 Fed. (2d) 103; certiorari granted, 331 U. S. 802. We make the same holding in this proceeding.

Petitioners' second contention is that the profits earned from renegotiable business during the year 1943 were entirely reasonable and not excessive, even though no salary allowance is made for their services. They urge that the only evidence contained in the record on this point is that produced by them, and that the inference to be drawn from the failure of the respondent to produce evidence is that no evidence could have been obtained which indicated that petitioners' earnings were excessive. Even if it were true that the respondent failed to produce any evidence to prove that petitioners' profits were excessive, we would not be justified in making the inference suggested by petitioners. They have the burden of proving that the respondent's determination that the profits were excessive is erroneous (*Nathan Cohen* v. *Secretary of War*, 7 T. C. 1002, 1011), and in order to prevail they must sustain this burden, regardless of

whether the respondent produced any evidence. It may not be amiss to point out, however, that, when the stipulation of facts filed by both parties and the testimony of respondent's witnesses are considered, we do not think it can be correctly said that the respondent did not produce any evidence in support of its determination.

Section 403 (a) (4) (A) of the Renegotiation Act lists the factors to be taken into consideration in determining excessive profits, as follows: (1) Efficiency of contractor; (2) reasonableness of costs and profits; (3) amount and source of public and private capital employed and net worth; (4) extent of risk assumed; (5) nature and extent of contribution to the war effort; (6) character of business; and (7) such other factors as should be considered for the public's interest and for fair and equitable dealing. To the extent that these factors can be applied to a business such as that of the petitioners, they have been considered.

The evidence discloses that during the year 1943 the sales of petitioners subject to renegotiation amounted to $1,140,045.95; that $932,070.52 of this amount represented sales made by petitioners for two principals (Alan Wood Steel Co., $500,367.50, and the Richardson Co., $431,703.02); and that, because of the volume of business in 1942, the rate of commission on the sales for these two companies was reduced at their suggestion, as follows:

|  | 1943 rate | Rate for prior years |
|---|---|---|
|  | *Per cent* | *Per cent* |
| Alan Wood Steel Co.: |  |  |
| Steel plates | 0.66 | 1.5 |
| Floor plates, high tensile steel | 2.5 | 5 |
| Richardson Co.: |  |  |
| Plastics | 7.5 | 10 |
| Pulleys | 3 | 10 |

During the year 1943 the sales of petitioners subject to renegotiation were divided among eleven principals and the percentage of renegotiable gross income to renegotiable sales was 3.49 per cent and the percentage of renegotiable net income to renegotiable sales was 2.95 per cent. Petitioner Greaves testified that in his opinion this was reasonable compensation, "in the first place because our commissions had already been cut from the normal, and, in the second place, because it is considerably below that which we have found from experience is necessary in order to maintain our establishment and provide for lean years."

The fact that petitioners' rates of commission in 1943 were lower than those of prior years should of course be taken into consideration in determining whether their profits for 1943 were excessive, but the fact that these rates were reduced does not necessarily mean that the reduced rates were not excessive. Moreover, the mere statement that

the compensation received is considerably below that which petitioners have found from experience to be necessary in order to maintain their establishment and provide for lean years is not persuasive when the evidence fails to disclose that it was petitioners' practice to set aside some amounts for this purpose in good years and that they had reasonable justification in 1943 for anticipating that "lean years" would follow.

The evidence indicates that the services performed by petitioners for their principals in connection with renegotiable business were those usually performed by manufacturers' agents in soliciting and procuring Government business; that they were not of a technical nature and very little, if any, knowledge of engineering was required in their performance; that, because of the demand in 1943 for the products manufactured by petitioners' principals, little selling effort was required; that the business risks assumed were only the normal risks of a business of a personal service nature; that the only financial risk involved was that, if the customers did not pay, petitioners would not receive their commissions; that the amount of capital employed in the business was small; and that for the year 1943 the amount of profit left petitioners after renegotiation was over eight times the average profit for the base period years on their renegotiable income alone, and nearly ten times the average base period profit on their combined renegotiable and nonrenegotiable net income. While we realize that petitioners are entitled to some increase in the profit of the taxable year over that of the base period years because of the change from a sole proprietorship to a partnership, the increase in volume of business handled as a result of the war, and the increase in hours of service, petitioners have not proved to our satisfaction that a determination which permits them to retain eight times the average profit for the base period years on their renegotiable income alone is erroneous. Our conclusion, after a careful consideration of all of the evidence, is that the respondent correctly determined that petitioners received excessive profit in the amount of $11,000 during the year 1943 from that part of their business which is subject to renegotiation, and we have made a finding to this effect.

The next contention of the petitioners is that the respondent erred in not including in expenses a reasonable allowance for salaries for them and that, had such an allowance been made, no excessive profit would have resulted. Petitioner Greaves testified that a reasonable salary for himself for his part-time services would be $7,500 per annum, and that $700 or $800 per month would be a reasonable salary for petitioner Olson.

Renegotiation Regulation 382.2, relied upon by petitioners, provides in part as follows:

382.2 ALLOWANCES.

\* \* \* \* \* \* \*

(2) Whether or not the profit and loss statement of a partnership or individual proprietorship includes salaries or drawing accounts for the partners or the individual proprietor as an expense, in determining the amount of excessive profits to be eliminated a so-called "salary allowance" may be made for reasonable salaries for such partners as are active in the business or for the individual proprietor if he is active in the business.

Petitioners argue that if a total salary allowance of $14,074.50 is applied to the net renegotiable income, the resultant renegotiable profit will amount to only $19,593.15, or substantially less than the $22,667.65 the respondent was willing to allow petitioners upon their unilateral determination.

The respondent contends that the regulation is permissive and that the making of a salary allowance is not mandatory upon either the War Contracts Price Adjustment Board or this Court. It states that salary allowances were considered proper by the Board in certain types of partnership and proprietorship businesses, such as manufacturers, where invested capital was involved, and where the liabilities were such as to justify a net return to the business itself, and that the Service and Sales Renegotiation Section of the Navy did not make salary allowances for active partners or proprietors in service and sales cases.

The respondent urges that where a partnership is a personal service organization and all income is due to personal efforts of the partners, it would appear incongruous and useless to make a salary allowance to such partners because that is substantially what the Service and Sales Renegotiation Section of the Navy Department attempted to ascertain, i. e., the value of the services of the partners, and that it could be handled either as "salary" or as "profits" and the result would be the same.

This is the first instance in a renegotiation proceeding that the question of an allowance for salary for partners in a personal service organization has been before this Court. We agree with the respondent that the provision in the regulation relied upon by the petitioners, that a salary allowance *may* be made for reasonable salaries for such partners as are active in the business, is permissive. In *Stein Brothers Manufacturing Co.* v. *Secretary of War, supra; Nathan Cohen* v. *Secretary of War, supra;* and *Grob Brothers* v. *Secretary of War,* 9 T. C. 495, deductions of salary for the services of active partners were allowed. These partnerships, engaged in the manufacture and production of war materials, had substantial investments in capital assets, inventories, a substantial number of employees, and used large quantities of materials. Such partnerships differ materially from partnerships engaged in business as manufacturers' representatives, the services of which are limited to making sales for their principals and which have only a negligible amount of capital invested in the business.

Petitioners were engaged in business as manufacturers' representatives. They were working for themselves and the only compensation they expected to receive and did receive was a share of the profits realized by the partnership. These profits, to the extent they were not excessive, measured the value of their services because other factors prevalent in a manufacturing enterprise were practically nonexistent. We do not think that Renegotiation Regulation 382.2 was ever intended to sanction the allowance of salaries to partners engaged in business as manufacturers' representatives. Its application being permissive and not mandatory, the respondent was not compelled to make salary allowances to petitioners in determining whether the amount of the profits realized from their renegotiable business was excessive. Their failure to make such allowances we do not think was error, and our conclusion is that the $6,165.62 allowed as costs incurred in connection with renegotiable business is all that petitioners should be allowed in computing the amount of their profits from such business.

The remaining question relates to the validity of the assessment and collection of interest by the War Contracts Price Adjustment Board on the defaulted refund of excessive profits.

From the very limited facts produced in connection with this issue it appears that prior to the institution of the instant proceeding the War Contracts Price Adjustment Board entered an order determining that the petitioners had received excessive profits in the amount of $6,565.58, and thereafter collected this amount plus interest at 6 per cent in the sum of $418.13, by means of withholding orders, from petitioners' principals.

The petitioners allege that the Board erred in demanding interest in the amount of 6 per cent on the amount determined as excessive profits from March 2, 1945, and urge that they are not liable to pay any interest on or in respect of any sum determined to be due pursuant to the Renegotiation Act.

The respondent contends that the question of the assessment and collection of interest is not within the authority vested by the Renegotiation Act in this Court and that our jurisdiction is limited to the redetermination of the amount of excessive profits.

We agree with the respondent. Section 403 (c) (2) of the Renegotiation Act places upon the War Contracts Price Adjustment Board the burden and the responsibility for the collection of excessive profits, both those determined by the Board itself and those determined by this Court under section 403 (e) (1) of the act. The Board is authorized to effect such collections by a broad range of administrative remedies, and upon the failure thereof to bring action in the appropriate United States court for recovery of the amounts due. Section 403 (e) (1) provides that a contractor aggrieved by an order of

the Board determining the amount of excessive profits may, within the time prescribed, file with this Court a petition for a redetermination thereof; and that this Court upon such filing shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits. Responsibility for the collection of excessive profits is not included in the powers granted in this section.

It is apparent from the foregoing that the jurisdiction of this Court is limited to the determination of the amount of excessive profits, if any. The amount of interest which the Board may collect, rightly or wrongly, is a measure of damages for the withholding of moneys which it determined to be due and owing to the United States, and is not excessive profits or an increase in the amount of excessive profits. This Court is without jurisdiction, therefore, to decide whether the assessment and collection of interest by the Board on defaulted refunds of excessive profits is authorized.

Reviewed by the Court.

*An order will be issued in accordance herewith.*

VAN FOSSAN, HILL, KERN, and OPPER, *JJ.*, concur only in the result.