STEWART DICKSON & COMPANY, STEWART DICKSON AND MARY E. DICKSON, HIS WIFE, GUIDO RUGGIERO, JOHN S. BENNETT & ELSIE E. BENNETT, HIS WIFE, AND EMMA THOMPSON, PARTNERS, FORMERLY DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF STEWART DICKSON & COMPANY, PETITIONERS, *v.* UNITED STATES MARITIME COMMISSION, RESPONDENT.

Docket No. 435–R. Promulgated March 29, 1949.

*Stephen Walter, Esq.*, for the petitioners.
*Paul L. Muilenburg, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: A unilateral determination was made that profits of the petitioner partnership in the amount of $180,000 for the fiscal year ended May 31, 1943, on contracts or subcontracts subject to renegotiation, were excessive. The only questions urged for decision are whether the Renegotiation Act of 1942 applied to the royalties received by the partnership from contractors or subcontractors whom it had licensed to use a patent, and, if they were subject to renegotiation, whether they ceased to be subject to renegotiation after the enactment of the Royalty Adjustment Act of 1942. The facts have been stipulated.

Stewart Dickson & Co. was a partnership composed of the several individual petitioners. It was organized on June 1, 1942. It had the exclusive rights in the United States to a patent on a method of making hatch covers for vessels. It licensed the manufacturers of hatch covers to use its rights under the patent at established rates. Those manufacturers were contractors or subcontractors within the meaning of the Renegotiation Act of 1942, as amended. They employed the patent rights of the petitioner in the performance of the contracts or subcontracts. The petitioner, during the fiscal year ended May 31, 1943, had gross income arising from license charges of the kind described above in the amount of $271,779.51. The parties have stipulated the amount of the excessive profits in various contingencies.

The question here is whether the partnership was a subcontractor within the definition contained in section 403 (a) (5) (i) of the Renegotiation Act of 1942. It provides that a subcontract means any agreement to furnish any article required for the performance of any other contract or subcontract. "Article" is defined in section 403 (a) to include equipment or other personal property. The exclusive

rights to the patent were personal property and the agreement between the partnership and the manufacturers of hatch covers was in each case an agreement to furnish personal property (the right to manufacture under a patent) required for the performance of a contract or subcontract. It was the intention of Congress "to reach out as far as possible to limit profits." Hearings before Subcommittee of the Committee on Finance, 77th Cong., 2d sess., Sept. 29–30, 1942, p. 127. The definition of a subcontract was intended to be extremely broad. *Grob Brothers*, 9 T. C. 495. That Congress intended profits derived under license agreements to be subject to renegotiation is also shown by a clarifying change made in the Renegotiation Act of 1943. The following appears on page 76 of Conference Report No. 1079, 78th Cong., 2d sess., House of Representatives:

Amendment No. 218. This amendment eliminates a phrase which would cast doubt on the includibility in the term "excessive profits," as used in the Renegotiation Act, of any portion of the profits derived from patent license agreements. The House recedes.

The Royalty Adjustment Act expressly provides in section 9 that nothing therein contained shall be deemed to preclude the applicability of section 403 of the Renegotiation Act of 1942. It is held that the profits of the petitioner were excessive in the amount of $180,000.

*An order will issue in accordance herewith.*