JERE J. CALLAHAN, INDIVIDUALLY AND AS TRUSTEE FOR EDWARD J. WHYTE III AND MARY ELEN WHYTE; W. RICHARD RALPH; FLORENCE EVA RALPH, AS TRUSTEE FOR WILLIAM RICHARD RALPH, JR.; GUSTAV E. NYQUIST; AND FLORENCE E. NYQUIST, CO-PARTNERS, DOING BUSINESS AS THE DIE ENGRAVING COMPANY, PETITIONERS, ET AL.,[1] *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket Nos. 512–R, 513–R.   Promulgated September 26, 1949.

*Raymond A. Fox, Esq.,* and *Harvey H. Berger, C. P. A.,* for the petitioners.

*Paul L. Muilenberg, Esq.,* and *Harland F. Leathers, Esq.,* for the respondent.

---

[1] Proceeding of the following petitioners is consolidated herewith: Jere J. Callahan, Individually and as Trustee for Edward J. Whyte III and Mary Ellen Whyte; W. Richard Ralph; Florence Eva Ralph, Individually and as Trustee for William Richard Ralph, Jr.; Gustav E. Nyquist; and Florence E. Nyquist, Co-partners, doing business as the Die Engraving Company.   [Docket No. 513–R.]

## OPINION.

Leech, *Judge*: We pass the first two grounds of petitioner's attack on the respondent's determinations and proceed to a consideration of the third. The stipulated facts disclose that a new partner was admitted as of April 1, 1944, and another as of June 1, 1944. It is the contention of petitioner that the admission of new partners did not have the effect of dissolving the petitioner. The respondent, on the other hand, argues that the old partnership was dissolved and a new partnership was created upon the admission of each new partner.

Under the Uniform Partnership Law in effect in the State of Michigan during the pertinent period, the entrance of a new partner with the consent of the old did not dissolve the partnership.[2] In *Helvering* v. *Archbald*, 70 Fed. (2d) 720; certiorari denied, 293 U. S. 594, it is stated:

  \* \* \* Whatever was the rule at common law, the entrance of a new partner with the consent of all the old partners is not now a cause of dissolution under the Partnership Law of New York (Consol. Law N. Y. c. 39) § 62; *Cameron* v. *Com'r.*, 56 F. (2d) 1021 (C. C. A. 3).[3]

We hold that petitioner was not dissolved by the entrance of a new partner.

Section 20.29 of the Uniform Partnership Act of Michigan, which provides for dissolution "caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business," relied upon by the respondent, is not applicable here in any event because no partner ceased to be associated in the carrying on of the business during the entire period January 1 to June 1, 1944.

Section 403 (c) (6) of the Renegotiation Act as amended by section 701 of the Revenue Act of 1943 furnishes respondent with his only authority to make the contested determinations. That section provides:

  This subsection shall be applicable to all contracts and subcontracts, to the extent of amounts received or accrued thereunder in any fiscal year ending after June 30, 1943 \* \* \*.

Section 403 (a) (8) defines the term "fiscal year" as the taxable year of the contractor or subcontractor under chapter 1 of the Internal Revenue Code. Section 48 (a) of chapter 1 of the code defines the "taxable year" as the calendar year, or the fiscal year ending during

---

  [2] Michigan Ann. Stat., vol. 14, sec. 20.31 (C. L. '29, § 9871).
  [3] Sec. 62 of the Partnership Law of New York is identical with section 20.31 of the Uniform Partnership Act of Michigan.

such calendar year, upon the basis of which the net income is computed. While a partnership is not a unit for taxation, it is a tax computing unit. Section 187 of the code requires a partnership to make a return for each taxable year, as a basis for determining the distributive share of the partnership profits taxable to each partner. It has been stipulated that petitioner's taxable year commenced on January 1, 1944. And, since the admission of a new partner did not terminate the partnership, it follows that respondent had no authority to determine excessive profits for either of the two periods in question, that there could be no excessive profits determined under the law for those two respective periods, and that, accordingly, there are no excessive profits under the law for those two periods. *Mrs. Grant Smith*, 26 B. T. A. 1178; *Oklahoma Contracting Corporation*, 35 B. T. A. 232; *Estate of Cyrus H. K. Curtis*, 36 B. T. A. 899. It is true that the three cited cases involve redeterminations of income tax deficiencies in which this same question as to fiscal year was raised under the Internal Revenue Code as is raised here under the Renegotiation Act involving redetermination of determinations of excessive profits. However, the similarity in the proceedings before this Court of those arising under the Renegotiation Act to those arising under the code is sufficiently great, we think, to render those cases strongly persuasive, if not controlling, authorities for our position here.

In *Maguire Industries, Inc.*, 12 T. C. 75 (on appeal, App. D. C.), we dismissed the proceeding for lack of jurisdiction because, for one reason, the determination had not been made "with respect to a fiscal year." But the basis of our jurisdiction there was section 403 (e) (2)[4] of the Renegotiation Act as added by section 701 of the Revenue Act of 1943, whereas the basis of our jurisdiction here is section 403 (e) (1) of the Renegotiation Act as added by section 701 of the Revenue Act of 1943.[5] No such requirement appears in the latter provision.

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

---

[4] * * * Any contractor or subcontractor * * * aggrieved by a determination of the Secretary made prior to the date of the enactment of the Revenue Act of 1943, with respect to a fiscal year ending before July 1, 1943, as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may * * * file a petition with The Tax Court of the United States for a redetermination thereof * * *.

[5] SEC. 403 (e). (1) Any contractor or subcontractor aggrieved by an order of the Board determining the amount of excessive profits received or accrued by such contractor or subcontractor may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the mailing of the notice of such order under subsection (c) (1), file a petition with The Tax Court of the United States for a redetermination thereof. * * *