SOUTHLAND STEEL COMPANY BY AGNES GILLESPIE, OWNER, AND AGNES GILLESPIE, INDIVIDUALLY, PETITIONERS, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket No. 578–R.   Promulgated October 26, 1949.

*Felix Atwood, Esq.*, for the petitioners.
*Ralph G. Cornell, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge*: The basic question here is whether Southland is subject to renegotiation under the provisions of the Renegotiation

Act of 1943. Petitioner contends that it is not subject to renegotiation under section 403 (c) (6) of the act[1] because the amounts received by it for the 10-month period here involved did not exceed $416,666.66 ($^{10}\!/_{12}$ of $500,000). It is stipulated that petitioner's sales for the 10-month period were $240,548.94. It is also stipulated that Butane, in its fiscal years ended September 30, 1944 and 1945, reported sales subject to renegotiation in the respective amounts of $1,100,000 and $2,378,000. Respondent contends that petitioner was under the "control of or controlling or under common control with" Butane under the provisions of section 403 (c) (6), *supra*, and petitioner is therefore subject to renegotiation, since petitioner's and Butane's aggregate sales exceeded the limitation of $500,000 provided in section 403 (c) (6), *supra*. It is undisputed that petitioner's gross sales were only $240,548.94 for the period involved and are not subject to renegotiation unless petitioner was under the control of or under common control with the Butane Equipment Co.

Respondent's contention that petitioner was under the "control of or controlling or under common control with" Butane during 1944 is based on the fact that there was a family relationship consisting of two brothers, James and Melvin Jackson, and Agnes Gillespie, who was a half sister; that all had some interest in Butane (James, the president, owned 2,069.65 shares of stock, Melvin, the secretary-treasurer, owned 530.35 shares, and Agnes Gillespie, the vice president and a director, owned 121.50 shares of stock); that petitioner was formed for the sole purpose of manufacturing shipping bands for the British 4,000-pound bombs, for the manufacture of which Butane was the prime contractor; and that the various business dealings between petitioner and Butane set out in our findings of fact show that in fact petitioner was under the control of or under common control with Butane during the period here involved. We do not agree with respondent's contention that Southland was in any manner under the control of Butane. The statute does not define what is meant by the term "control." Webster's New International Dictionary, 2d ed., defines the word "control" as meaning, among other things: "To exercise

---

[1] (6) This subsection shall be applicable to all contracts and subcontracts, to the extent of amounts received or accrued thereunder in any fiscal year ending after June 30, 1943, whether such contracts or subcontracts were made on, prior to, or after the date of the enactment of the Revenue Act of 1943, and whether or not such contracts or subcontracts contain the provisions required under subsection (b), unless (A) the contract or subcontract provides otherwise pursuant to subsection (1), or is exempted under subsection (1), or (B) the aggregate of the amounts received or accrued in such fiscal year by the contractor or subcontractor and all persons under the control of or controlling or under common control with the contractor or subcontractor, under contracts with the Departments and subcontracts (including those described in clause (A), but excluding subcontracts described in subsection (a) (5) (B)) do not exceed $500,000 and under subcontracts described in subsection (a) (5) (B) do not exceed $25,000 for such fiscal year. If such fiscal year is a fractional part of twelve months, the $500,000 amount and the $25,000 amount shall be reduced to the same fractional part thereof for the purposes of this paragraph.

restraining or directing influence over; to dominate, regulate, hence to hold from action; to curb, to subject."

Respondent, as has been heretofore stated, argues that Southland during 1944 was "under the control of or controlling or under common control with" the Butane Equipment Co. within the meaning of the Renegotiation Act. Respondent, in arguing that this is so, relies upon its regulations. It points out that regulations were formulated pursuant to the Renegotiation Act of 1942 (Joint Renegotiation Manual, published January 27, 1944) which interpreted the phrase "common control," as printed in the margin.[2]

Respondent does not contend that (1), (2), and (3) of the regulations are applicable, but it does stress (4) as being applicable and contends that under that part of the regulations the War Contracts Price Adjustment Board was justified in finding that there was actual control by Butane of petitioners. We think the evidence clearly shows that Southland was not controlled by Butane, nor did Gillespie, the sole owner and operator of Southland, have any control over Butane. We have made findings of fact to that effect after a careful review and consideration of all the evidence.

We make no adverse holding with respect to the regulation upon which respondent relies, but, giving full faith and credit to it, we think petitioner has proved there was no control, either actual or otherwise, over Southland by Butane and there was no control over Butane by either Southland or Gillespie. No doubt James and Melvin Jackson rendered valuable help and assistance to their sister in running Southland, but they exercised no control over that business. The overwhelming weight of the testimony is to the contrary.

The respondent having determined that petitioner had excessive profits under facts which show that it lacked authority to do so, an order will be entered that there are no excessive profits for the period in question. Cf. *Callahan* v. *War Contracts Price Adjustment Board*, 13 T. C. 355. This latter case held that, since each of the respondent's two contested determinations of the contractors' excessive profits for two fiscal periods, each less than its taxable year,

---

[2] 348.3. Tests of "Control". In determining whether the contractor controls or is controlled by or under common control with another person, the following principles should be followed :

(1) *Corporate Control:* A parent corporation which owns more than 50% of the voting stock of another corporation controls such other corporation and also controls all corporations controlled by such other corporation.

(2) *Individual Control:* An individual who owns more than 50% of the voting stock of a corporation controls the corporation and also controls all corporations controlled by the corporation.

(3) *Partnership Control:* A general partner who is entitled to more than 50% of the profits of a partnership controls the partnership.

(4) *Other Cases:* Actual control is a question of fact. Whenever it is believed that actual control exists even though the foregoing conditions are not fulfilled, the matter may be determined by the Department or Service conducting the renegotiation.

were without statutory authority, respondent's determinations should both be expunged.

The conclusion we have here reached makes it unnecessary that we rule upon petitioners' other issues, which were raised only in the alternative.

Reviewed by the Court.

*An order will be issued in accordance herewith.*