*Decision will be entered under Rule 50.*

ELDER W. MARSHALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELDER W. MARSHALL AND BESSIE I. MARSHALL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 23432, 23433. Promulgated January 27, 1950.

*Sidney B. Gambill, Esq.*, and *Norman D. Keller, Esq.*, for the petitioners.

*Albert J. O'Connor, Esq.*, for the respondent.

OPINION.

OPPER, *Judge*: The deficiencies in issue are for income tax in the respective amounts of $5,388.96 for the year 1943 in Docket No. 23432 and $3,001.64 for the year 1945 in Docket No. 23433. Petitioner. claims an overpayment. The issue in each of the consolidated proceedings is whether petitioner, as a member of a law partnership, is entitled to apply section 107, Internal Revenue Code, so as to include in the time of the rendition of the services the period prior to his admission to the partnership.

The facts have been stipulated and are hereby found accordingly. Elder W. Marshall, hereinafter called petitioner, and Bessie I. Marshall, his wife, reside in Pittsburgh, Pennsylvania, and filed their income tax returns for the years involved with the collector for the twenty-third district of Pennsylvania. ·

Petitioner is an attorney at law. He was admitted to practice in Allegheny County, Pennsylvania, in 1907. Except for military service during the first World War and an interval of ten years from 1928 to 1938 during which he served as a judge of the Court of Common Pleas of Allegheny County, he has been continuously engaged in the practice of law since 1907.

On January 17, 1938, petitioner was employed by the firm of Reed, Smith, Shaw & McClay, which had been a law partnership for some years prior to January 1, 1932. He was admitted to membership in the firm on January 1, 1941, and as such became entitled to share in fees received thereafter for services rendered by the firm even prior to his admission.

In May, 1942, the firm received two fees totaling $100,000, each of which represented all of the compensation for specific legal services rendered by the firm for these clients between January 1, 1935, and December 31, 1941. Petitioner received 3½ per cent of the net profits of the firm for the year 1942, which included a portion of such fees.

Similarly, in 1943, the firm received fees totaling $200,250, representing the entire fee for services for certain clients from January 1, 1935, to June 30, 1943. During the same year it received two other fees totaling $75,000, representing the total compensation for specific services rendered in one case from January 1, 1939, to June 30, 1943; and in the other case from April 1, 1939, to December 31, 1943. Petitioner received as his share of the net profits of the firm 3½ per cent

thereof during the first half of 1943 and 4¼ per cent during the second half.

During 1945 the firm received fees totaling $410,000, representing all of the compensation for services rendered in one case from December 1, 1938, to February 21, 1945; in another from January 1, 1933, to May 16, 1945; and in the third, from January 1, 1932, to December 5, 1945. Petitioner received as his distributable share of the net profits 5 per cent.

In each case petitioner reported his income and computed his tax under the provisions of section 107 as though the payments in question had been received by him ratably over the period during which the services had been rendered. Respondent in his deficiency notice determined that the entire amount was taxable as ordinary income received in full, except that for the year 1945 the tax was permitted to be computed as though the services in question had been rendered for a period beginning January 1, 1941, the date of petitioner's admission to the partnership.

Disposition of the controversy depends upon the answer to a simple and comparatively narrow question. Does section 107, Internal Revenue Code,[1] in the form in which it was applicable to the years in issue contemplate allocation of compensation for personal services rendered by a partnership over the entire period of rendition of the services, notwithstanding that the taxpayer-partner who shares in the compensation was not a member of the partnership during all of that period?

The parties are in apparent agreement that prior to the 1942 amendment [2] respondent's position was the only tenable one. It was in fact so held. *Ralph G. Lindstrom*, 3 T. C. 686. But there the court took pains to point out on affirmance, *Lindstrom* v. *Commissioner* (C. C. A., 9th Cir.), 149 Fed. (2d) 344, 346, that:

\* \* \* The subsequent amendment of this section by Section 139 of the Revenue Act of 1942 does not apply as it relates only to taxable years beginning *after* December 31, 1940.

---

[1] SEC. 107. \* \* \*

(a) Personal Services.—If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.

[2] SEC. 107. \* \* \*

In the case of compensation (a) received, for personal services rendered by an individual in his individual capacity, or as a member of a partnership, and covering a period of five calendar years or more from the beginning to the completion of such services, (b) paid (or not less than 95 per centum of which is paid) only on completion of such services, and (c) required to be included in gross income of such individual for any taxable year beginning after December 31, 1938, the tax attributable to such compensation shall not be greater than the aggregate of the taxes attributable to such compensation had it been received in equal portions in each of the years included in such period.

A comparison of the language of the section before and after the amendment demonstrates, however, that emphasis was reversed by the new provision and was removed from the person who renders the services to the person who is required to report the income. That this was intentional appears from the legislative history:

> In order for section 107 (a) to be applicable it is not necessary that the individual who includes in his gross income compensation for such personal services be the person who renders such services. * * *[3]

The fact, therefore, that petitioner could not have participated in the rendition of all of the services involved because he was not connected with the firm during the entire period of service would not of itself deprive him of resort to it. Respondent concedes, moreover, that "petitioner's contention * * * is not expressly forbidden by the language of the statute." And he apparently accepts the further proposition that the accession of petitioner to partnership did not bring about a dissolution of the old firm nor create a new one. *Callahan* v. *War Contracts Price Adjustment Board*, 13 T. C. 355; Uniform Partnership Act, secs. 29, 31, so that it can not successfully be contended that the services were not rendered by the partnership of which petitioner became a member.

As we understand it, respondent's resistance to the application of section 107 reduces to the proposition that, although within a permissible interpretation of its language, petitioner's case was not actually intended by Congress to be included, and that to do so would result in absurd and unreasonable consequences. Cf. *John Bell Keeble, Jr.*, 2 T. C. 1249, 1252. In rejecting his argument, as we feel compelled to do, we pass only upon the present situation and others analogous to it, reserving the "absurd" eventualities for future disposition when necessary if the facts he envisages actually arise.

The outstanding characteristic of the arrangement by which petitioner became entitled to the share of the compensation upon which the tax is now in dispute is that petitioner's partners, in an obviously arm's length business transaction and for a contribution on petitioner's part which must to them have appeared adequate, permitted him to share in the compensation for services rendered not by him, but by the other members of the firm and its employees partly prior to his association with them. We can not say under these circumstances that the arrangement did not have a business purpose, nor that the income re-

---

[3] In order for section 107 (a) to be applicable, it is not necessary that the individual who includes in his gross income compensation for such personal services be the person who renders such services. For example, a partner who shares in compensation for such personal services rendered by the partnership may be entitled to the benefits of section 107 (a), notwithstanding that he took no part in the rendering of such services. Likewise, in community property States, the spouse of a person who renders such personal services may be entitled to the benefits of section 107 (a). (S. Rept. No. 1631, 77th Cong., 2d sess., p. 109.)

ceived does not come squarely within the four corners of the taxing statute. "The will of Congress has been plainly expressed in language that does not permit or require a strained or unnatural interpretation. The words of the statute may not be extended or distorted beyond their plain, popular meaning." *Lindstrom* v. *Commissioner*, *supra*, 346. Once it is recognized that the requirement of actual participation in the services has been eliminated, we can not perceive in these facts the inherent absurdity or lack of congressional intent to which respondent's fears are directed.

Respondent's interpretation not only reduces the period over which the compensation may be allocated, but entirely eliminates allocation where the partnership status does not extend over three years. These are results which were required under the predecessor section. *Ralph G. Lindstrom, supra.* They are not required by its present wording.

In a sense it is respondent's interpretation which would tend to create unreasonable consequences. Petitioner became associated with the firm early in 1938. By the end of 1943 that association had extended for almost five years. The record does not show whether or not petitioner in his capacity as an employee rendered services resulting in the fees received in 1943, nor what part this might have played in his becoming a partner. The failure to reveal this is not significant, bearing in mind the entire irrelevance of demonstrating whose services earned the compensation. But it is at least possible in this case or some other that for well over 36 months petitioner himself contributed to the earning of the 1943 income. Yet respondent eliminates the entire amount from the scope of section 107 on the ground that by the end of 1943 petitioner had not actually been a member of the firm for the 36-month period.

Similarly the record shows that petitioner's percentages varied from year to year, so that although he was a partner the share of the fees which he would have received had they been ratably paid over the period of his membership would not have been the same. Practical considerations looking to the elimination of impossibly intricate computation, and including the complications involved in the withdrawal of other members and their changes in compensation hence likewise lead to acceptance of the simple formula which respondent himself apparently approves. And the generality of the statutory language justifies the conclusion that it was not the legislative purpose to draw narrow distinctions among the infinite possible factual variations which this very record thus exemplifies.

Since it is the status of the recipient of the income in the year of receipt, and not either his status in prior years, *Federico Stallforth,* 6 T. C. 140, or the identity of the individual who contributed the services that is made to govern the application of section 107 in its

present form, we are satisfied that under the facts of this proceeding petitioner correctly computed his tax by use of its provisions.

On this disposition of the principal issue no dispute apparently exists as to the application of the Current Tax Payment Act. *William F. Knox*, 10 T. C. 550.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HILL, *J.*, dissenting: In my view the majority opinion is based upon the inherently erroneous premise that the law firm here involved was the identical partnership before the addition of petitioner thereto as it was after that event.

The Uniform Partnership Act permits an existing partnership to merge into a new partnership relation without the necessity of liquidating its assets or disrupting its business operations, but that act does not change the characteristics of a partnership. Relative to this subject matter the majority opinion cites and relies on *Callahan* v. *War Contracts Price Adjustment Board*, 13 T. C. 355, 359, and sections 29 and 31 of the Uniform Partnership Act. On this point, the *Callahan* case cites *Helvering* v. *Archbald*, 70 Fed. (2d) 720 (CCA–2), and quotes the following excerpt therefrom: "Whatever was the rule at common law, the entrance of a new partner with the consent of all the old partners is not now a cause of dissolution under the Partnership Law of New York." This quotation appeared to suffice for the purposes there at hand. However, immediately following the excerpt above quoted, the opinion of the Circuit Court proceeded as follows: "Of course it is true that de facto a new firm is inevitably formed when a new partner is taken in, even though, as here, that event is provided for in the original articles and the agreement admitting him declares that the old articles shall continue in effect."

The foregoing quoted statement of the Circuit Court clearly shows that the Uniform Partnership Act does not change the age old concept of the inherent characteristics of a partnership. It is still fundamental that "a partnership has no legal existence aside from the members who compose it" and that "for tax purposes it does not exist separate and apart from the partners." Such statements would seem to be axiomatic, but to further fortify their correctness I cite *Alpin J. Cameron*, 8 B. T. A. 120, 125, in which is quoted with approval the following language from the opinion of the United States District Court in *United States* v. *Coulby*, 251 Fed. 1000 (affirmed per curiam, CCA–2).

* * * the law looks through the fiction of a partnership and treats its profits and its earnings as those of the individual taxpayer. Unlike a corporation, a partnership has no legal existence aside from the members who compose it. The Congress, consequently, it would seem, ignored, for taxing purposes, a partnership's existence, and placed the individual partner's share in its gains

and profits on the same footing as if his income had been received directly by him without the intervention of a partnership name.

The purpose of section 107 (a) is to lighten the tax burden of an individual in respect of compensation received all or largely in one tax year for personal services rendered over a prescribed minimum period of time. The services must be rendered either by the individual taxpayer or by a partnership of which he is a member. In the instant case the services in question were not rendered by petitioner, but were rendered in part by a partnership of which petitioner was not a member and in part by a partnership of which he was a member. The partnership services rendered prior to January 1, 1941, are in no degree attributable to petitioner or available to him for the application of section 107 (a), for he was not a member of the partnership which rendered such services. From and after January 1, 1941, petitioner was a member of a partnership which continued to render personal services in respect of the same specific matters here relevant which had engaged the services of the partnership existing prior to that date.

It is my view that for the purpose of section 107 (a) petitioner can avail himself only of the personal services rendered by the partnership as it existed from and after he became a member of it on January 1, 1941. The partnership of which petitioner was a member existed only from and after January 1, 1941. This pronouncement is not in conflict with the Uniform Partnership Act, cited and relied on in the majority opinion.

Only as a member of the partnership was petitioner entitled to a share of the net profits thereof. His participation in such profits was based on his services as a member of the partnership and was his only compensation for such services. Obviously, under the agreement by which petitioner became a member of the partnership, the compensation which he was to receive as a partner was for services which he was to render to the partnership within the period of his membership therein.

It is true that under the partnership agreement petitioner participated as a partner in the net profits of the partnership on the basis of certain fixed percentages thereof, including fees which the law firm received after petitioner became a partner, in full compensation for legal services which began at a time long antedating January 1, 1941. However, this can not mean that the share of profits which petitioner received was in part compensation to him for services rendered by a partnership of which he was not a member and in which he as a partner rendered no services. The fact that he as a member of the partnership participated in the net profits, including all legal fees received during such membership, does not mean that he participated in the fees as such for partnership services rendered before he became

a member. The compensation he received was for his services within the period of such membership, although measured, in part, by an amount equal to a percentage of fees for legal services begun prior to his membership in the firm.

It follows that, in considering whether the provisions of section 107 (a) are applicable to any item or items includible in the gross income of petitioner for the respective tax years involved, the period over which income is ratably allocable can not, for its beginning, antedate January 1, 1941.

LEECH and ARNOLD, *JJ.*, agree with this dissent.