Estate of Robert I. Gale, Deceased, Robert I. Gale, Jr., Executor, Guy W. Waters and Edgar H. Vogel, Petitioners, *v*. War Contracts Price Adjustment Board, Respondent.

Docket No. 741-R. Promulgated March 24, 1953.

*Alfred W. Massnick, Esq.*, for the petitioners.
*Ralph G. Cornell, Esq.*, for the respondent.

## OPINION.

WITHEY, *Judge:* Petitioners and respondent agree that the employment contract between Crucible and petitioners was subject to renegotiation and under such contract Waters-Vogel renegotiated commission payments totaling $207,409 made during the year 1943. The record shows Crucible was anxious to terminate the employment contract, as a result of which Crucible made an offer of $1,700,000 for cancellation thereof. The petitioners accepted the offer. Respondent determined that $225,000 of the $1,700,000 was excessive profit.

At the outset we should state petitioners have not submitted any evidence relating to the amount of excessive profits. They limit their case to the sole question as to whether the cancellation agreement is subject to the Renegotiation Act of 1943, as amended. We must decide whether any portion of the sum paid by Crucible in cancellation of the employment contract represents renegotiable profits

of the petitioners for 1943 within the meaning of the Renegotiation Act of 1943, as amended.

Petitioners contend that they did not receive any amounts under a contract with a Department or from a subcontract during the year 1943. Further, that the amounts actually received were in consideration of the cancellation of the employment contract between Crucible and petitioners, and, hence, did not represent commissions paid under a contract or subcontract within the purview of the Renegotiation Act. Respondent argues the cancellation agreement was a subcontract within the purview of section 403 (a) (5) (B). He contends that in the light of congressional history and prior decisions of this Court section 403 (a) (5) (B) is to be given an extremely broad interpretation to include the cancellation agreement here in issue. Further, that the amount paid was in lieu of future commissions and therefore the determination of the Board was proper.

The applicable section of the Renegotiation Act of 1943, as amended, reads as follows:

SEC. 403. (a) For the purposes of this section—

\* \* \* \* \* \* \*

(5) The term "subcontract" means—

\* \* \* \* \* \* \*

(B) Any contract or arrangement other than a contract or arrangement between two contracting parties, one of which parties is found by the Board to be a bona fide executive officer, partner, or full-time employee of the other contracting party, (i) any amount payable under which is contingent upon the procurement of a contract or contracts with a Department or of a subcontract or subcontracts or determined with reference to the amount of such a contract or subcontract or such contracts or subcontracts, or (ii) under which any part of the services performed or to be performed consists of the soliciting, attempting to procure, or procuring a contract or contracts with a Department or a subcontract or subcontracts: Provided, That nothing in this sentence shall be construed (1) to affect in any way the validity or construction of provisions in any contract with a Department or any subcontract, heretofore at any time or hereafter made, prohibiting the payment of contingent fees or commissions; or (2) to restrict in any way the authority of the Secretary or the Board to determine the nature or amount of selling expenses under subcontracts as defined in this subparagraph, as a proper element of the contract price or as a reimbursable item of cost, under a contract with a Department or a subcontract.

The phrase in section 403 (a) (5) (B), "determined with reference to the amount of such a contract or subcontract or such contracts or subcontracts," has been interpreted by this Court in *Leon Fine*, 9 T. C. 600, 608, wherein the Court quoted from *George M. Wolff*, 8 T. C. 146, as follows:

In other words, the phrase "determined with reference to the amount of such a contract," etc., may not be isolated, as the respondent would have it, but must

be construed in connection with the preceding language and in the light of the purpose sought to be accomplished by Congress. So construed, the language of the statute aptly applies to manufacturers' agents and sales engineers who procure Government contracts for their principals and whose compensation is contingent upon the business they are able to obtain for the principals or fixed by the amount of such business.

In the *Fine* case, the Court, citing the *Wolff* case further, said:

the petitioner was not a subcontractor within the meaning of section 403 (a) (5) (B) merely because his compensation was based or computed upon the amount of the contracts or subcontracts procured by his principal. Since petitioner's compensation of $17,467.07 received from Raymond De-Icer Co. was not based or contingent upon the amount of contracts procured by him for his principal, it was not derived pursuant to subcontracts as defined in section 403 (a) (5) (B), as construed in the *Wolff* case.

The legislative history of section 403 (a) (5) (B) discussed in *George M. Wolff, supra*, 150–151, and *Providence Wool Combing Co.*, 14 T. C. 979, indicates that Congress intended to give the Government the right to recover excessive fees and profits earned not only by manufacturers but also by manufacturers' agents on contracts procured by such agents for supplying commodities of a war-end use.

Petitioners' theory of this case, as evidenced by their pleadings and brief, is based upon the cancellation agreement only. Their contention is that the respondent has renegotiated the cancellation agreement, which agreement they claim is not a "contract" or "subcontract" under the Renegotiation Act, and the amount payable in consideration thereof is not based or contingent upon any "contract" or "subcontract" falling within the meaning of said Act. Respondent, on the other hand, contends that the cancellation agreement falls within said Act and that it therefore has a right to renegotiate any sums paid thereunder. We do not agree with either contention in that we do not agree that the respondent has renegotiated any sum because it was payable under the cancellation agreement. We find that the respondent has in effect renegotiated only sums which are contingent and based upon the employment contract which all parties agree properly falls within the ambit of the Renegotiation Act. Petitioners have given us no evidence upon which to reach a contrary conclusion. Granted, it has fully shown the negotiations between the parties leading to the cancellation agreement so far as those negotiations appear in writing, but we are in the dark completely as to any factors considered by the parties in arriving at the various sums from time to time proposed as the consideration to be paid for the cancellation agreement. Petitioners have in this respect failed to sustain their burden of proof.

That the consideration paid for the cancellation agreement was "determined with reference" to probable prospective income under

the terms of the employment contract is apparent when it is considered that it was cancellation of the *employment contract* which was the sole object of the cancellation agreement. We can find no plausible basis upon which to find otherwise. It is straining credulity beyond all bounds to believe experienced business men such as petitioners have shown themselves to be would agree to sell a right so valuable without reference to that value. The value of the employment contract and the value of the cancellation agreement can be measured from petitioners' viewpoint on the basis of two factors. As of the date of the cancellation agreement the value of both agreements depended upon commissions still to be received by petitioners under the employment contract. The other factor which might have an effect upon the value of the two agreements would be Crucible's desire and the strength of that desire to regain control of its own sales department and deal directly with customers theretofore procured by petitioners. We in effect hold that the respondent has not determined to be renegotiable that part of the $1,700,000 allocable to the latter factor but that he has rightly determined to be renegotiable that part of said sum allocable to the first value factor referred to.

Petitioners argue that, this renegotiation having taken place some 2 years subsequent to the cancellation of the employment contract, it necessarily follows that the contract subjected to renegotiation was the cancellation agreement. This argument has no force. It is not "contracts" which are renegotiated under the Act, but the profits or "prices" realized therefrom. Congress created the War Contracts Price Adjustment Board for the express purpose of making such determinations as the respondent has here made. In all cases of price adjustment a determination must first be made by the Board as to that portion of income received under any contract or arrangement (in this case the cancellation agreement) which represents profits falling within its jurisdiction. Congress most certainly did not intend to limit the Board's powers to the life of contracts falling within the Renegotiation Act, but rather to profits received *at any time* which are contingent or based upon such contracts (in this case the employment agreement) even though no longer in existence. Mere incorporation of renegotiable profits in the consideration to be paid for a contract which might not fall within the Act is not sufficient to place such profits beyond the reach of the Board. To hold otherwise would be in effect to subvert congressional intention in adopting section 403 (a) (5) (B) of the Renegotiation Act, for, should we find for petitioners, any contractor or subcontractor falling within that Act might avoid renegotiation merely by entering into an agreement ancillary to a renegotiable contract, the consideration for which might be in reality a lump sum payment of amounts allocable to the renegotiable contract.

We do not deem this holding to be inconsistent with our holding in *George M. Wolff, supra,* and *Leon Fine, supra,* as we are here simply holding that the respondent has renegotiated sums which, although paid under the cancellation agreement, were nevertheless based upon the employment contract which both parties agree is subject to renegotiation.

Petitioners do not dispute the amount of profits respondent has found to be excessive, nor have they offered any evidence upon that point. The burden of proof is on the petitioners to establish the incorrectness of respondent's determination. *Nathan Cohen,* 7 T. C. 1002, 1010; *Grob Brothers,* 9 T. C. 495, 502.

For the above reasons we have found it a fact that petitioners' profits were excessive in the amount of $225,000.

Reviewed by the Court.

*An order will be issued in accordance herewith.*