OPINION. Opper, Judge: Disposition of the ultimately contested issue of whether and to what extent petitioner’s profits from war contracts were excessive seems to us to be dictated in this proceeding by application of the principle of burden of proof. The Under Secretary of War determined that petitioner’s profits were excessive to the extent of $32,000. The claim that they were not, in that or any amount, is made in the petition filed here. Respondent now seeks to have the amount increased to $43,000. This claim was made by answer as required by our Rules of Practice (Rule 64-III). The rules further provide (Rule 64 — 1): Except as otherwise prescribed by this Rule, proceedings for the redetermination of excessive profits under the Renegotiation Act shall be governed by the existing Rules of Practice before this Court. * * * Rule 32 provides: The burden of proof shall be upon the petitioner, except as otherwise provided by statute, and except that in respect of any new matter pleaded in his answer, it shall be upon the respondent. There is nothing in the statute forbidding expressly or by implication the result thus arrived at by the rules that the present petitioner has the burden of proof with respect to any amount up to that originally determined as excessive, and that the respondent has the burden in respect to any additional amounts proposed for the first time in his answer in the present proceeding. The legislation, it is true, emphasizes the independence of proceedings for redetermination of excessive profits and refers to them as “de novo.” There is little doubt that it was intended that the evidence taken and the judgment exercised should to no extent be limited by that of the Renegotiation Board or a Secretary. Nevertheless, the mechanical requirements of any litigation call for some method by which the inertia of even balance can be eliminated. Upon one of the parties there must be placed the obligation to initiate the proceeding and to go forward by placing in evidence some basis for its disposition. Similarly, when at any other point in the hearing the opposing evidence is of substantially equal strength, the necessity for some conclusion likewise exists. That situation is the traditional and classic occasion for application of principles dealing with the burden of proof. See Abrath v. N. E. Ry. Co., L. R. 11; Q. B. Div. 440, 455; 11 A. C. 247; Jones, “The Law of Evidence,” 3d ed., 238; Thayer, “A Preliminary Treatise on Evidence,” 357, 358; Pennsylvania Railroad Co. v. Chamberlain, 288 U. S. 333, 339; District of Columbia v. Vignau (App. D. C.), 144 Fed. (2d) 641. There is no reason to assume that Congress intended such problems in renegotiation cases to be incapable of solution; and there is every justification for the belief that, when jurisdiction in such cases was entrusted to the Tax Court, it was on the assumption that its procedure and practice[2] would be adopted as far as reasonably consistent with renegotiation proceedings.[3] On the two subordinate issues of fact in the present proceeding the evidence is incomplete and indecisive. The first requires a determination of the amount of renegotiable business, which is in turn dependent upon whether the contracts for which petitioner received payment in the year before us were completed after April 28, 1942, and involved a war-end use. The invoices and purchase orders which form the foundation for any finding on this question were missing to a considerable enough extent to leave a wide gap between the possible conclusions to be drawn. And even the attempted, allocation suggested as a possibility by respondent can not be founded on any evidence that the existing purchase orders were typical and probative of those missing.[4] See Molnar v. Commissioner (C. C. A., 2d Cir.), 156 Fed. (2d) 924. On the other factual controversy, involving the amount reasonably to be allocated to partners’ salaries, evidence of comparable payments made or demanded by others similarly situated — an element of heavy probative significance in the presentation of such an issue, see L. Schepp Co., 25 B. T. A. 419, 430—does not seem to us by any means reliable. None was submitted in admissible form on behalf of petitioner, and that produced by respondent was so far from apparent equivalence that we find it of equally little value. For practical purposes, it can be said that the record on both of the factual issues is as strong — or as weak — in favor of one party to the controversy as of the other. On neither has the evidence of either party succeeded in persuading us that the figure should be different from that conceded by the other. For these reasons, we have made no findings as to the precise amount of total renegotiable business nor of the reasonable value of partners’ services. For purposes of the two branches of the case and in the posture in which the record leaves it, the figures must be different according to the location of the burden of proof. On the branch of the case which places in issue the excessive character of the $32,000 of profits determined to be such by the Secretary and as to which petitioner has the burden of proof, we must assume in respondent’s favor, because petitioner has not succeeded in proving otherwise, that renegotiable business was $181,500 and that partners’ salaries attributable to the renegotiable business would be unreasonable in excess of $12,500. Deduction of compensation to partners, and of the allocable costs in accordance with the stipulation of the parties, would leave renegotiable profits of almost $54,000, or approximately $22,000 after deducting the $32,000 of excessive profits. This $22,000 represents 12 per cent on renegotiable net sales and 36 per cent on total capital employed.[5] These ratios are not only large by themselves, but they, as well as the absolute amount of profits, compare favorably with the peacetime years when a deduction for partners’ salaries would have wiped out most, if not all, of the firm’s operating profit. On the basis of a comparison with net sales, capital employed, prewar profits, or any other standard which the record makes available, it is impossible to say that $22,000 of profits after adequate compensation to partners would not be more than reasonable for a business of the size and nature shown here. See Stein Brothers Manufacturing Co., 7 T. C. 863. On the other hand, when we come to respondent’s affirmative claim, the figures correspondingly redound to petitioner’s benefit. On this branch of the case we must assume, for lack of contrary evidence, that the renegotiable business was only $161,500, and that compensation to partners attributable to it would be reasonable at $18,850. Appropriate adjustments for over-all costs would bring renegotiable profits down to approximately $39,000, from which the deduction of the $32,000 treated as excessive would leave but $7,000. This is áy3 per cent of net sales, and only slightly in excess of a return of 10 per cent on invested capital. Respondent has himself selected a figure for permissible profits of $11,148, which leaves little warrant for rejecting a smaller amount.[6] Under the circumstances, the figure in question can not, in our view, be regarded as so palpably unreasonable or excessive as to justify an increase in the amount over that determined by the Secretary of War. Resort to other considerations appropriate in an examination of the excessive character of war profits leads to no different result. It is true that petitioner cooperated faithfully in the procurement program and in fact received commendation from one of the War Department offices. The partners were industrious, diligent, and skillful, the operations efficient and economical, and some independent contribution was made to the planning of the articles manufactured. All of the financing was supplied by petitioner and none was called for from the Government. Cf. Stein Brothers Manufacturing Co., supra. On the other hand, the plant was small and uncomplicated, the products and the manufacturing processes simple, and the designs and specifications were supplied to petitioner by Government agencies. A considerable proportion of the articles was received by petitioner in either completely or partially fabricated form. The capital required was small and the pricing risks were negligible. Not only were the articles manufactured essentially similar to those forming petitioner’s peacetime product, but its civilian business was maintained and in fact increased over the prewar average, so that problems of both conversion to war production and of reconversion after the emergency must be considered relatively slight. Finally, the periodic reductions in contract prices appear to have been rather the result of demands by the procurement agencies than of voluntary action by petitioner. The upshot is that none of the factors in this field is outstanding or constitutes a compelling force in either direction. The record in these respects likewise is close to an even balance. It follows, as we took occasion to note at the outset, that-application of the principle of burden of proof disposes of the contested fundamental issues with respect both to the amount of excessive profits originally determined and to the additional amount affirmatively proposed by respondent in this proceeding. The conclusion is that petitioner received excessive profits in the amount of $32,000. Reviewed by the Court. An order will issue in accordance herewith. Section 403 (e) (1), Sixth Supplemental National Defense Appropriation Act, 1942, as amended by Revenue Act of 1943, Act of February 25, 1944, section 701 (b), referring specifically to Internal Revenue Code, section 1111. “The proceeding before The Tax Court shall not be treated as a proceeding to review the determination of the Board or Secretary, but shall be a proceeding de novo. Thus the court may adduce any evidence which it sees fit in making its determination. It is provided that the contractor or subcontractor, as the case may be, is to have the burden of going forward with the evidence, whether as to the existence of excessive profits or as to the amount thereof. The burden of the proof, however, may be upon the Government or the contractor or subcontractor according to the court’s determination.” H. Rept. No. 871, 78th Cong., 1st sess., Nov. 18, 1943, p. 77. “* • • The petitioner has failed to show that the undestroyed records were representative of those destroyed. • * • “However, it may be conceded arguendo that in the present case sufficient evidence appears to warrant the assumption tfejat the purchase orders actually found are representative of petitioner’s total sales to persons other than the Army, Navy or Marine Corps. • * •” Respondent’s brief, pp. 27, 28. The record is devoid of any such evidence, and, of course, respondent’s concession can not supply it in his favor. Approximately $61,000, the use of which in the business seems reasonably probable. Respondent also computes a permissible profit of 6 or 7 per cent In reference to the statutory limitation upon cost-plus fixed-fee contracts; 6 per cent would be about $9,700 on renegotiable business of $181,500.