ELLIS COAT COMPANY, INC., PETITIONER, *v.* THE SECRETARY OF WAR, RESPONDENT.

Docket No. 276-R.    Promulgated November 28, 1947.

*Stanley Worth, Esq.*, and *Peter P. Morrell, C. P. A.*, for the petitioner.

*Harland F. Leathers, Esq.*, and *William T. Becker, Esq.*, for the respondent.

1012

1014

## OPINION.

Hill, *Judge*: We must determine first, how much profit petitioner made in 1943 on its renegotiable contracts and, secondly, what part of such profit, if any, is excessive. There are three questions affecting the determination of how much profit petitioner made: (1) The reasonableness of salaries paid by petitioner to its officers and executives, (2) what part of such salaries, if any, must be allocated to Independent, and (3) what part of certain general expenses including salaries must be allocated to renegotiable business.

In 1943 petitioner paid its officers and executives a total of $240,545.05 as compensation. Respondent contends that a total of $87,000 before allocation is reasonable. After considering the nature and extent of the services performed by the personnel involved and the history of the compensation paid these men prior to 1943, and in view of the relationship such compensation bears to volume of business and profits, and having given effect to other pertinent facts and circumstances, we have concluded and found as a fact that $193,850 represents reasonable compensation. This conclusion involves allowing the officers the rate of compensation they received in 1941, which was $27,880 each, or an aggregate for the three officers of $83,640. The total aggregate compensation actually paid the executives in 1943 we consider reasonable, which aggregate amounted to $110,210. Adding $83,640, deemed reasonable for the officers, to the $110,210, actually paid the executives and considered as reasonable compensation for 1943, totals $193,850.

What part, if any, of such compensation must be allocated to Independent? We think none need be so allocated, with one exception discussed below. It is true that petitioner's officers and executives performed services for Independent, but these services were in effect

part of the amount petitioner paid for having the manufacturing done by Independent. Since Independent manufactured the items on a cost-plus basis, petitioner's prime cost was reduced to the extent that it furnished executive services free of charge to Independent. If Independent had had to pay for such services it would have charged petitioner with the additional cost. Under these circumstances it is clear that the compensation paid by petitioner to its officers and executives for the work they did for Independent reduced correspondingly the amount of manufacturing cost billed to it by Independent and resulted in an increased margin of the amount of sales over such manufacturing cost. Hence, it is clear that it would result in little, if any, difference in the net profit to petitioner whether a portion of such compensation be allocated to Independent and by it added to cost of manufacture or the whole thereof be deemed an expense of petitioner and deducted by it from its gross profits. This conclusion does not involve the ignoring of corporate entities nor does it consolidate returns. Nor is there any element here of a voluntary assumption of another's obligations or a gratuitous furnishing of services. The conclusion is based on the conviction that the compensation paid by petitioner for services of its officers and executives furnished Independent was, under the facts we have here, an expense of petitioner and an expense contributing to petitioner's ability to make a profit. As such, it is a deductible expense of petitioner and we so hold, with the following exception. Independent was awarded a Government contract for parachute packs. Petitioner did not benefit from this contract. Consequently, such services as petitioner's officers and executives furnished Independent in connection with this contract can not be considered a proper expense of petitioner. Respondent states on brief, without contradiction by petitioner, that 18.8 per cent of Independent's billings for 1943 related to the parachute pack contract. Also, it is agreed between the parties that 14.6 per cent of the total compensation paid by petitioner in 1943 is allocable to sales activities pertaining solely to nonrenegotiable business. Therefore, a total of 33.4 per cent of $193,850, found by us as the reasonable amount of compensation paid by petitioner in 1943, is not deductible in resolving the question we have here and must be eliminated from the above stated amount of compensation in determining the amount of compensation to be allocated between renegotiable and nonrenegotiable business. (See explanatory marginal note, *supra*.)

The next problem is the one of allocating petitioner's indirect expenses, such as salaries, freightage, insurance, and so on, as between renegotiable and nonrenegotiable business. Both parties are agreed that a "prime cost ratio" is proper. Petitioner's computation of the "prime cost ratio" has been set out in the findings of fact. Respondent contends that the value of the free issue material must be excluded

in computing such ratio. We agree with respondent. The purpose of applying "prime cost ratio" is to gauge the relative significance of the two types of business in terms of their drain on indirect cost. Looking in detail and realistically at petitioner's operation, we are impressed that by virtue of the free issue material any appreciable drain on indirect costs was eliminated. For example, the procurement problem, priorities, shipping, storage, in so far as the record indicates, insurance, as well as sales expenses, were entirely eliminated by virtue of the Government's furnishing of the material in question free of cost to petitioner. We are, therefore, unable to conceive of any appreciable drain on indirect costs by virtue of the free issue material and we therefore conclude and hold that the value of such material, which cost petitioner nothing, should be eliminated from prime costs in arriving at a proper ratio for allocating indirect costs as between renegotiable and nonrenegotiable business. So eliminating such material results in an allocation of indirect costs as has been indicated in our findings of fact of 61.05 per cent and 38.95 per cent, respectively, to renegotiable and nonrenegotiable business.

Based on the above holdings, petitioner's profit for 1943 amounts to $173,095.87, as has been shown in our findings. How much of this is excessive? No precise formula can be availed of for an answer. The act furnishes various factors to be considered in determining whether and to what extent excessive profits exist. Section 403 (a) (4) mentions such factors. They include such items as efficiency, the reasonableness of cost and profits with regard to volume, comparative pre-war and war earnings and products, the amounts and sources of capital, extent of risk assumed, contribution to the war effort, including inventive and developmental contributions, character and extent of subcontracts, etc. We have given careful consideration to these various factors. Generally speaking, petitioner is a service company. It did no manufacturing directly. Its physical equipment is small in amount. No great capital or other risks were involved. There was no substantial change in the nature of its wartime service as compared to its peacetime operation. No important inventive or developmental contributions were made. It can not fairly be said that petitioner's war business was disadvantageous to petitioner economically as compared to its prior peacetime business. On the other hand, it is clear that petitioner did an efficient and effective job in carrying on its war work. In view of these general considerations and others not detailed here, we have concluded that $107,800 of petitioner's profit of $173,095.87 for 1943 is excessive, and we so hold.

Reviewed by the Court.

*An order will be issued in accordance herewith.*

JOHNSON, *J.*, dissenting: The computation of petitioner's profit in the majority's report in my opinion is over-simplified. The findings of fact provide the necessary detail and break-downs of salaries and other expenses for a precise elimination of the amounts attributable to sales activity, and the 18.8 per cent representing the part of Independent's sale proceeds not derived from petitioner should be applied against salaries paid to those officers and executives who rendered services to Independent, not to the total salaries paid. In arriving at the proper fraction for an allocation of salaries and expenses between renegotiable and civilian business, I also believe that the addition of the value of free-issue material to amounts paid by the War Department is necessary properly to reflect the comparative volume of work. ·The amount held refundable on the majority's profit computation I deem to be excessive.