RALPH E. LARRABEE, DOING BUSINESS AS L. & F. MACHINE COMPANY, PETITIONER, *v.* HENRY L. STIMSON, SECRETARY OF WAR OF THE UNITED STATES, ROBERT P. PATTERSON, UNDER SECRETARY OF WAR OF THE UNITED STATES, RESPONDENTS.

RALPH E. LARRABEE, DOING BUSINESS AS L. & F. MACHINE COMPANY, PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket Nos. 150–R, 398–R, 601–R. Promulgated July 26, 1951.

*Walter E. Barton, Esq.*, and *John Van Aalst, Esq.*, for the petitioner. *James H. Prentice, Esq.*, and *John F. Wolf, Esq.*, for the respondents.

OPINION.

MURDOCK, *Judge:* The petitioner claims that the Sixth Supplemental National Defense Appropriations Act of April 28, 1942, as amended by the Revenue Act of 1942, hereafter called the Renegotiation Act, conferred no authority on the Secretary of War to make a unilateral determination that the petitioner realized excessive profits for 1942. His argument is that excessive profits for 1942 could be recaptured only by the mutual agreement of the contractor or subcontractor and the War Department. He points out that the opinions of the legislators and others at the time the bill was being considered, and later, differed on this point. However, section 403 (a) of the Renegotiation Act defined renegotiate and renegotiation to "include the refix-

ing by the Secretary of the Department of the contract price" and the Secretary made numerous unilateral determinations of excessive profits with respect to years ending before July 1, 1943. A unilateral determination of excessive profits for 1942 made by the Secretary of War was involved in *Lichter* v. *United States*, 334 U. S. 742. The present point was not raised by the litigants but, nevertheless, the Court said that the Government, in the absence of a mutual agreement with a contractor or subcontractor, might announce its unilateral determination of the amount of excessive profits claimed. The Revenue Act of 1943 was enacted on February 25, 1944. Section 701 (b) amended section 403 of the Renegotiation Act to include 403 (e) (2), providing that any contractor or subcontractor "aggrieved by a determination of the Secretary made prior to the date of the enactment of the Revenue Act of 1943 with respect to a fiscal year ending before July 1, 1943, as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may * * * file a petition with the Tax Court of the United States for a redetermination thereof." The jurisdiction of this Court and the petitioner's right to be here were made to depend upon the issuance of a unilateral order by the Secretary. Those provisions clearly indicate a Congressional intention that the Secretary had the right to make a unilateral determination. The Secretary had the authority to make the unilateral determination for 1942 dated November 3, 1944.

The petitioner contends that the amounts which he received for repairs made by him on machines owned and used by his customers in performing prime contracts are not subject to renegotiation. Section 403 (a) (5) of the Renegotiation Act defines subcontract as "any purchase order or agreement to perform all or any part of the work, or to make or furnish any article, required for the performance of any other contract or subcontract." The repairs made by the petitioner sometimes included materials or parts supplied by the petitioner. Sales of machinery to be used in the performance of war contracts are renegotiable. *National Electric Welding Machines Co.* v. *Stimson*, 10 T. C. 49; *Providence Wool Combing Co.* v. *Secretary of War*, 14 T. C. 979. The customers of the petitioner in the performance of their contracts had to use machines. Those machines required repairs. The repairs were a part of the work required for the performance of the contracts. Appropriated Government funds used to pay the contractors were, in turn, used by the contractors to pay the petitioner for the repairs. This fact alone is sufficient to distinguish *Davis* v. *Patterson*, 12 T. C. 335, the only case cited by the petitioner on this point. The repair work performed by the petitioner on machinery used by its customers in the performance of their war contracts is a subcontract within the quoted definition.

Another contention of the petitioner is that only the excess over $500,000 of its sales for 1943 and 1944 is subject to renegotiation. This point has been decided adversely to the petitioner. *Beeley* v. *W. C. P. A. B.*, 12 T. C. 61.

The petitioner paid Frawley $183,535.47 in accordance with paragraph 3 of their agreement dissolving their former partnership. That payment represented 40 per cent of the net profits of the business for 1942. The petitioner argues that the $183,535.47 must be subtracted or eliminated in some way in determining his net profits for 1942 subject to renegotiation. If Frawley had continued as a partner, his share of the profits for 1942 would not escape renegotiation, but wages of an employee are not subject to renegotiation. The record does not show what amount, if any, representing compensation for Frawley was deducted in arriving at the unilateral determination that $300,000 of the 1942 profits were excessive. Nevertheless, the petitioner claims that the portion of his profits allocable to renegotiable sales which he paid to Frawley is larger than the total "retained" profits from that part of the business after renegotiation and, as a result, not only is he left with no profits for the year but some of his property has been taken in violation of the Fifth Amendment of the Constitution. The facts would not support that argument if it appeared either that a substantial portion of the payment to Frawley represented a part of the purchase price of Frawley's interest, a capital expenditure, rather than an expense incurred in hiring Frawley during 1942, or that the 40 per cent due Frawley was to be computed after renegotiation.

The respondent argues that reasonable compensation for Frawley's services during 1942 was $14,000 and the remainder of the $183,535.47 was a capital expenditure representing a part of the purchase price which the petitioner paid for Frawley's 40 per cent interest in the business. The petitioner has not met that argument in his briefs. Frawley as a partner prior to 1941 had been receiving 40 per cent of the profits. He decided that he did not want to be a partner any longer although he wanted to continue his services in the business for two years. The respondent's argument, that $183,535.47 was mostly for the 40 per cent partnership interest and not merely compensation for services after Frawley ceased to be a partner and was relieved of the risks, obligations, and responsibilities of a partner, is not without merit despite the wording of paragraph 3 of the agreement.

The petitioner points out that the dissolution agreement was entered into at arm's length when the parties had no reason to anticipate renegotiation, and argues that Frawley was entitled to receive and actually received 40 per cent of the net profits before renegotiation. A small part of the total payment was made to Frawley long after

the unilateral determination for 1942 had been made. However, the theory of renegotiation is that the contractor or subcontractor has received money which by right does not belong to him, which came from appropriated funds, which he must return to the Government, and which does not form a part of his net income for Federal income tax purposes. "Contracts must be understood as made in reference to possible exercise of rightful authority of government, and no obligation of a contract can extend to defeat the legitimate government authority." *Louisville & Nashville R. R.* v. *Mottley*, 219 U. S. 467; *Steuart & Bro.* v. *Bowles*, 322 U. S. 398; *Ring Construction Corporation* v. *Secretary of War*, 8 T. C. 1070, affd. 178 F. 2d 714, certiorari denied 339 U. S. 943. The Court concludes that the dissolution agreement did not require the payment to Frawley of any more than 40 per cent of the legal net profits of the petitioner for 1942, i. e., of the amount which the petitioner was allowed to retain as his net profits from the business after he had been required to refund the amount determined to be excessive. Cf. *Floyd* v. *Ring Construction Co.*, 66 F. Supp. 436. That conclusion is the same whether the amount paid was merely compensation for Frawley's services or was, in part, purchase price for Frawley's interest in the business since, whatever it was, it was computed as a part of net profits, and the net profits of the petitioner as finally determined will not include the amount taken from him under renegotiation.

An alternative contention of the petitioner that he and Frawley were engaged in a joint venture during 1942 offers no solution since the evidence, especially the stipulation, clearly shows that they were not engaged in a joint venture. *Balestrieri & Co.* v. *Commissioner*, 177 F. 2d 867.

A reasonable allowance for the services of Frawley for 1942 must be deducted in computing the profits of the business and a part of that deduction must be allocated to the renegotiable business. The amount which he was actually paid for his services during 1943 is a reasonable allowance for each year. The difference between that amount and 40 per cent of the net profits after renegotiation, or whatever part thereof was intended to compensate Frawley for his services, will be too slight to affect the final determination of excessive profits for the year.

The ultimate issue in the case is what amount, if any, of the profits from renegotiable business for each year was excessive. The petitioner devotes less than a page of his brief to this point as a separate issue. The Court finds no reason in the petitioner's argument or in the facts to make any change in the unilateral determinations except on the basis of reasonable allowance for compensation of the petitioner and Frawley. The record shows that the War Contracts Price

Adjustment Board allowed $30,000 as reasonable compensation for the petitioner and $20,000 as reasonable compensation for Frawley for the years 1943 and 1944. The evidence shows that those amounts were inadequate and the Court has determined the amount of excessive profits for each year after taking into consideration reasonable allowances for the compensation of those two men.

*An order will issue in accordance herewith.*