OPINION. Hill, Judge: The first issue concerns the question whether some form of common control existed between the partnership, Island Machine Tool Company, and the corporation, Island Stamping Company, Inc., so that the sales of each (about $400,000 for each company) may be combined to equal sales in excess of $500,000, thereby subjecting the partnership to renegotiation.[1] The question whether or not any two or more business ventures are under common control is a question of fact which must be determined on the basis of all the evidence presented.[2] Petitioners contend that their partnership was not under common control with the corporation and that since its renegotiable sales were in fact less than $500,000, it is not subject to renegotiation for the year here involved. The evidence introduced indicates that while the partnership was engaged in machining tools for aircraft, the corporation was engaged in welding assemblies for aircraft; that the business of each was conducted in separate buildings seven-tenths of a mile apart; that while Victor Pechtel was the head man of the partnership, Dwight Chester was in charge of the corporation; and that with the exception of a minor repair item neither company performed work for the other or subcontracted any work to the other. We believe that such evidence indicates that the two firms were not jointly operated; however, we are convinced by the evidence that they were under common control. The corporation was a close corporation, whose stock was held by three parties. The controlling interest, 60 per cent, was held by Victor Pechtel.[3] Of the remaining 40 per cent of the stock, 20 per cent was held by Dwight Chester, the son-in-law of Victor Pechtel, and 20 per cent was held by Matilda Chester, the daughter of Victor Pechtel and the wife of Dwight Chester. Dwight Chester was the president and acted in the capacity of general manager of the corporation. He was in fact its operating head. However, Victor Pechtel was the treasurer and was in charge of the very important function of disbursing funds needed by the corporation. The partnership was under the control of the same family. It consisted of three general and equal partners, Victor Pechtel, Charles Pechtel, the son of Victor, and Dwight Chester. Victor Pechtel was in fact the operating head of this venture. There were only four people involved in both ventures and two of the partners held 80 per cent of the stock in the corporation. In addition, the partnership made a substantial loan to the corporation in the amount of $21,043.17, and at the end of the period here involved the balance due on this loan amounted to $11,861.26. In view of the foregoing facts we have found that common control was exercised over both ventures. To find otherwise would require us to turn our backs on the reality of the situation. We hold that since the combined renegotiable sales of the partnership and the corporation exceeded the jurisdictional minimum of $500,000, the partnership is subject to renegotiation. The second and main issue concerns the amount, if any, of excessive profits realized by the partnership for the fiscal year ended April 30, 1945. Petitioners maintain that they had no excessive profits during this period. In support of this position the argument was made that the respondent did not make adequate allowance in its computation for salaries of the three partners. Petitioners also argue generally that respondent did not properly take into consideration the factors mentioned in section 403 (a) (4) (A) of the Renegotiation Act[4] so far as they related to petitioners’ business. In this proceeding the petitioners have the burden of proving their position that the partnership received no excessive profits. Cohen v. Secretary of War, 7 T. C. 1002. With respect to the question of reasonable salaries, section 403 (a) (4) (B ) of the Renegotiation Act provides for recognition of deductions allowed for income tax purposes. Of course, a partnership is not allowed any deduction for income tax purposes on account of compensation of active partners; however, the renegotiating authorities have recognized, and we have held, that allowance should be made for reasonable compensation for services actually rendered by them. Larrabee v. Stimson, 17 T. C. 69; Beeley v. W. C. P. A. B., 12 T. C. 61; Grob Brothers v. Secretary of War, 9 T. C. 495; Stein Brothers Manufacturing Co v. Secretary of War, 7 T. C. 863. While the record does not indicate what allowance for such salaries was made by the respondent in its determination, it is apparent from the statement of counsel at the hearing and the arguments on brief that the respondent considers the amount claimed as reasonable salaries for the partners as set out in the petition ($75,000) to be excessive and argues that a reasonable salary allowance is $25,000. At the hearing there was introduced evidence with respect to the ability, experience, training, and reputation of the three partners and the nature of the work they performed. A witness testified as to a reasonable amount of salary for the work performed. After due consideration of all the evidence, we have found that a reasonable amount of the salary allowance for the partners is $45,000. After consideration of all the evidence presented to us, including the total business done by the partnership, the amount of capital invested, the capital risk involved, the efficiency of the partnership work, its contribution to the war effort, its ability to carry on without Government aid, the extent to which the partnership’s business was competitive, the extent of risk with respect to increased costs and the amount of a reasonable salary allowance, we have concluded, as is evidenced in our findings of fact, that during the fiscal year here involved the three petitioners, doing business as a partnership under the firm name of Island Machine Tool Company, realized excessive profits in the amount of $80,000. An order will be issued in accordance herewith. Section 403 (c) (6) of the Renegotiation Act: Sec. 403 (c) (6). This subsection shall be applicable to all contracts and subcontracts, to the extent of amounts received or accrued thereunder in any fiscal year ending after June 30, 1943, whether such contracts or subcontracts were made on, prior to, or after the date of the enactment of the Revenue Act of 1943, and whether or not such contracts or subcontracts contain the provisions'requited under subsection (b), unless (A) the contract or subcontract provides otherwise pursuant to subsection (i), or is exempted under subsection (i), or (B) the aggregate of the amounts received or accrued in such fiscal year by the contractor or subcontractor and all persons under the control of or controlling or under common control with the contractor or subcontractor, under contracts with the Departments and subcontracts (including those described in clause (A), but excluding subcontracts described in subsection (a) (5) (B)) do not exceed $500,000 and under subcontracts described in subsection (a) (5) (B) do not exceed $25,000 for such fiscal year. If such fiscal year is a fractional part of twelve months, the $500,000 amount and the $25,000 amount shall be reduced to the same fractional part thereof for the purposes of this paragraph. With respect to the purpose of the common control clause, we stated in Moening v. W. C. P. A. B„ 14 T. C. 589, that— The purpose of the “common control” clause in question is at least in part to prevent contractors from establishing, either in corporate or partnership form, a series of ad hao business enterprises, each of which is to work on a phase of war contracts, in order to prevent the total receipts of the individual contractors derived from war contracts or subcontracts from reaching the jurisdictional minimum. See Senate Report No. 440, part 2, 80th Cong., 2d sess., p. 11. The record does not indicate the extent of Victor Pechtel’s investment in the corporation, but testimony indicated generally that he probably furnished at least a substantial portion of the capital for this venture. Sec 403 (a). For the purposes of this section— ******* (4) (A) The term “excessive profits” means the portion of the profits derived from contracts with the Departments and subcontracts which is determined in accordance with this section to be excessive. In determining excessive profits there shall be taken into consideration the following factors : (i) efficiency of contractor, with particular regard to attainment of quantity and quality production, reduction of costs and economy in the use of materials, facilities, and manpower; (ii) reasonableness of costs and profits, with particular regard to volume of production, normal pre-war earnings, and comparison of war and peacetime products ; (Hi) amount and source of public and private capital employed and net worth; (iv) extent of risk assumed, including the risk incident to reasonable pricing policies; (v) nature and extent of contribution to the war effort, including inventive and developmental contribution and cooperation with the Government and other contractors in supplying technical assistance; (vi) character of business, Including complexity of manufacturing technique, character and extent of subcontracting, and rate of turn-over ; (vii) such other factors the consideration of which the public interest and fair and equitable dealing may require, which factors shall be published in the regulations of the Board from time to time as adopted.