STONER MANUFACTURING CORPORATION, PETITIONER, *v.* SECRETARY OF WAR, RESPONDENT.

STONER MANUFACTURING CORPORATION, PETITIONER, *v.* UNITED STATES OF AMERICA, RESPONDENT.

Dockets Nos. 80–R, 370–R. Promulgated November 17, 1953.

*B. H. Sears, Esq., Thurman Hill, Esq.,* and *Edward H. Streit, Esq.,* for the petitioner.

*Harland F. Leathers, Esq.,* and *James H. Prentice, Esq.,* for the respondents.

**OPINION.**

HARRON, *Judge:* The principal question in these proceedings is whether the petitioner realized excessive profits from renegotiable contracts in each of the years 1942 and 1943, and, if so, to what extent. Several subordinate issues are presented relating to whether certain items should be allowed as costs of renegotiable sales in each of the years in question.

The Under Secretary of War determined that the petitioner realized excessive profits of $355,400 in 1942 on contracts subject to renegotiation. The respondent in an amended answer affirmatively alleged that the petitioner realized excessive profits from renegotiable contracts of not less than $441,000 during the year 1942. The War Contracts Price Adjustment Board determined that the petitioner realized excessive profits of $1,055,000 in 1943 on contracts subject to renegotiation.

The petitioner has the burden of establishing that the original determination of excessive profits for each of the years before us is erroneous. The respondent has the burden of proof with respect to the increase in excessive profits for 1942 as set out in his affirmative pleadings. *Nathan Cohen* v. *Secretary of War*, 7 T. C. 1002; *Ring Construction Corporation*, 8 T. C. 1070, affd. 178 F. 2d 714, certiorari denied 339 U. S. 943; *Rosner* v. *War Contracts Price Adjustment Board*, 17 T. C. 445.

The subordinate issues relating to the allowance of certain items as costs of renegotiable sales in each of the years 1942 and 1943 are considered first. There is no dispute as to the amount of renegotiable sales in each of the years before us. The evidence establishes and we have found that the petitioner's costs of renegotiable sales for the years 1942 and 1943, were $1,429,395 and $2,336,753, respectively.

With respect to the costs of renegotiable sales for the year 1942, petitioner contends that the unamortized balance of deferred expenses, $32,502.82, incurred in 1941 in connection with renegotiable contracts, should be allowed as an item of cost in 1942, and that reserves for possible additional taxes and other contingencies, for reconditioning Government-owned machinery, and for postwar rehabilitation totaling $115,000 should be considered as items of costs in 1942. The petitioner concedes that the aforementioned items of deferred expenses and reserves are not "properly applicable exclusions and deductions of the character which the contractor or subcontractor is allowed under Chapter 1 and Chapter 2 E of the Internal Revenue Code," within the meaning of section 403 (c) (3) of the Renegotiation Act. The petitioner's argument that they should none the less be considered as items of costs in determining profits from renegotiable sales is without merit. See *Albert & J. M. Anderson Mfg. Co.* v. *Secretary of War*, 12 T. C. 132, 138.

As is set forth in the Findings of Fact, we have allowed the petitioner, as items of costs in 1942, additional capital stock tax paid in the amount of $3,850, and officers' salaries in the total amount of $85,875. The respondent argues that the amount of compensation paid to the petitioner's officers in 1942 is excessive to the extent of $25,417. We have considered all of the evidence. The company's success was attributable in large part to the initiative and ability of its officers, particularly H. B. Stoner who, as president, received over half of the compensation allowed. We note, also, that in 1941 when the company undertook considerable work in converting its facilities and preparing for war production, the total compensation of $7,500 paid to the petitioners officers was very modest. From all of the evidence, it is concluded that the aggregate amount of salaries of officers, $85,875, is reasonable.

The only item of cost in dispute for the year 1943 concerns reserves. The petitioner argues that an increase in reserves in the amount of $335,000 for such contingencies as postwar rehabilitation and renegotiation of 1943 profits should be considered as costs of renegotiable sales for 1943. What we have said above with respect to items of reserves as allowable costs for the year 1942 is dispositive of this issue. Petitioner's contention cannot be sustained.

The principal issue is the amount of excessive profits, if any, realized by the petitioner from renegotiable contracts in each of the years in question. The petitioner contends that no part of its realized profits of $584,848 from renegotiation sales for the year 1942 is excessive; and that no more than $685,000 should be considered as excessive out of 1943 profits of $1,343,464. The petitioner argues that it is entitled to the highest consideration on the basis of the statutory renegotiation factors, and points with emphasis to certain aspects of its war performance record for the years before us.

The petitioner also argues that with respect to the determination of excessive profits for the year 1943, the value of "free issue" material, i. e., the brass furnished by the Government for the manufacture of cartridge cases, should be added to the amount of renegotiable sales for 1943 in considering the relationship of profit to gross sales. The petitioner places the value of the free issue material at over 2 million dollars. The statement of the renegotiating authority attached to the petition for the year 1943 places the value of the free issue material at approximately $1,700,000. It is not necessary for us to determine the exact value of the free issue material used by the petitioner in the manufacture of cartridge cases during 1943, as we are of the opinion that the petitioner's argument is without merit. This Court has previously rejected, essentially, the same contention. See *Ellis Coat Co.* v. *Secretary of War*, 9 T. C. 1004, 1017.

We have carefully considered all of the evidence, which is voluminous, and all of the arguments advanced by counsel in these proceedings. Upon the entire record, we have found as a fact and conclude that the petitioner realized excessive profits from renegotiable contracts during the years 1942 and 1943, in the amounts of $355,400, and $1,000,000, respectively. The evidence adduced by the respondent in support of his affirmative pleadings with respect to the year 1942 has been considered. The evidence does not in our opinion justify the increase in excessive profits urged by the respondent. In arriving at our determination of excessive profits for the year 1943, we have taken into account and have allowed as an item of cost the increase of over $48,000 in the amount of the amortization deduction allowed the petitioner by reason of a recomputation of the amortization deduction pursuant to section 124 (d) of the Internal Revenue Code.

In assaying the evidence, all of the "factors" set forth in section 403 (a) (4) (A) of the Renegotiation Act have been considered and have been given such weight as seemed appropriate. The petitioner draws attention to various favorable factors in its performance record. We recognize those factors fully. We have considered, among other things, the petitioner's early and total conversion to war production with the attendant problems and difficulties; its substantial investment in machinery and equipment for the production of munitions of war; the resourcefulness and ingenuity demonstrated by its officers and plant engineers in converting existing equipment and adapting second-hand machinery to the required manufacturing processes; the good quality of its products; its research and development work in connection with the manufacture of 20 mm. armor piercing shot; its improvements in production techniques and its substantial increase in production during the years before us; its record as a low cost efficient producer; and its reconversion problems.

We have also considered other factors stressed by the respondent. The petitioner's early conversion to war work was, admittedly, occasioned by the fact that its officers recognized at an early date that the production of its regular products would become increasingly more difficult, if not impossible, in a war economy. A conversion to war production, or to the manufacture of products essential to a war economy was necessary if the petitioner was to continue in business. Only limited significance can be given to the petitioner's base period operations due to the lack of similarity between war production and peacetime business. We note, however, that the petitioner's retained profits from renegotiable contracts for the years 1942 and 1943, before Federal income taxes and after the elimination of excessive profits as herein determined, amount to $229,448, and $343,464, respectively. The retained profits for each of the years before us are substantially in excess of the aggregate of the petitioner's profits before Federal income taxes of $154,177 for the entire base period. The retained profits for 1942 and 1943 are also substantially in excess of the petitioner's net worth on January 1, 1942, of $165,234. No new capital was added to the business except from earnings.

The ingenuity demonstrated by the petitioner's officers, while commendable, was fairly compensated for by the allowance, as costs of renegotiable sales, of the generous salaries paid to them.

The petitioner required substantial assistance from the Government in order to get into production of both cartridge cases and shot. It received advances from the Government under its contracts of $474,666 during 1942. It had the use of Government-owned machinery and equipment which cost $325,000.

Machinery and equipment purchased by the petitioner at a cost of $485,000, and other emergency facilities acquired by the company for

war production, were all covered by certificates of necessity. Much of this machinery and equipment is adaptable to peacetime products.

The petitioner assumed no unusual risks in performing its war contracts. Its prices were sufficiently high to obviate any risks incident to close pricing. The company's margin of profit on renegotiable sales for 1942 and 1943, before the elimination of excessive profits, was over 29 per cent and 36 per cent, respectively. Since the company was a prime contractor, risk of inventory and receivable loss was negligible. The petitioner's substantial investment in emergency facilities did not involve any unusual risks considering the protection afforded by certificates of necessity, and the amount of profits realized.

Although the manufacturing processes involved were reasonably complex, once production lines were established the process was a repetitive, mass production operation. The bulk of the company's renegotiable sales in each of the years before us was in cartridge cases.

The petitioner made no unusual inventive or developmental contributions to the war effort. Petitioner stresses the fact that it used carbide dies in the production of its 20 mm. cartridge cases. But the evidence shows that carbide dies were employed in the mass production of other sizes of cartridge cases prior to the time the petitioner adapted their use to the manufacture of 20 mm. cases. The petitioner, also, points with emphasis to its work in the development of a satisfactory 20 mm. armor piercing shot, particularly, its method of attaching the windshield to the shot so that the windshield would not come off in the firing and flight of the projectile. But this too was the adaptation by the company of already established manufacturing techniques to the problem at hand. As we have already noted the ingenuity displayed by petitioner's officers, its good production record, and other favorable considerations have, in our opinion, been fairly compensated for by the considerable profits retained by the company after the elimination of excessive profits for 1942 and 1943.

It is held that the petitioner realized excessive profits from renegotiable contracts during the years 1942 and 1943, in the amounts of $355,400, and $1,000,000, respectively.

*Orders will be entered in accordance herewith.*