Agnes W. Grayson v. Commissioner.
Grayson v. Commissioner
Docket No. 41847.
United States Tax Court
T.C. Memo 1954-70; 1954 Tax Ct. Memo LEXIS 177; 13 T.C.M. (CCH) 552; T.C.M. (RIA) 54176; June 18, 1954, Filed George A. Meekison, Esq., and Otto W. Hess, Esq., for the petitioner. John K. Lynch, Esq., and Stanley W. Ozark, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income taxes and penalties against petitioner and her husband for the calendar years 1942 to 1949, inclusive, as follows: Delinquency
Sec. 294 (d)
Year
Income Tax
Fraud Penalty
Penalty
Penalty
1942
$ 314.50
$ 157.25
$ 78.63
1943
1,681.14
840.57
420.29
1944
467.33
233.66
166.83
$ 74.77
1945
2,801.71
1,400.85
700.43
448.27
1946
2,281.81
1,140.90
570.45
365.09
1947
1,261.53
630.76
315.38
201.84
1948
5,083.04
2,541.52
1,270.76
813.29
1949
4,747.18
2,373.59
1,186.79
759.55
$18,638.24
$9,319.10
$4,659.56
$2,662.81
*178 The only issues for us to decide are (1) whether petitioner is liable for a joint tax liability asserted against petitioner and her husband for the years 1942 to 1949, inclusive, and (2) whether petitioner is liable for the 50 per cent fraud penalty determined for each of the years 1942 to 1949, inclusive. The other penalties are not contested. Findings of Fact Some of the facts have been stipulated and they are hereby found. Petitioner is an individual now residing at Ridgeville Corners, Ohio. She is a high school graduate, has had 2 1/2 years of college education, and taught school for 2 years. She married Thomas B. Grayson about the year 1929, when she was 21 years old. Three children were born as the issue of said marriage: Katherine Grayson Kohl, now 23 years old; Thomas D. Grayson, now 18 years of age; and a third child who died a few hours after birth. Upon the death of petitioner's father in 1931, petitioner's mother, Katherine B. Simpson, inherited three parcels of land in Fulton County, Ohio: a 40-acre tract in Royalton Township, a 100-acre tract in Chesterfield Township, and a 78-acre tract in Chesterfield Township, hereinafter sometimes referred to as Parcels *179 1, 2, and 3, respectively. On May 8, 1934, Katherine B. Simpson conveyed Parcels 1 and 3 by deed of gift to petitioner. On November 19, 1938, petitioner's mother conveyed the 100-acre tract, being Parcel 2, to petitioner, reserving a life estate for herself. When these tracts were deeded to petitioner, petitioner had a verbal understanding with her mother that the latter would be taken care of by petitioner and her husband. Petitioner, her husband, her mother, and the two minor children resided on the 100-acre farm (Parcel 2) continuously during the period 1942 to June 1948. From 1942 until some time in 1948, petitioner's husband farmed the 3 parcels of land. Petitioner sometimes assisted her husband by driving a tractor or working in the fields. Petitioner never sold any produce or livestock from the farms, never deposited any money in a bank, and never ordered any machinery or supplies for the farms. The income earned from the operation of the farms was used in part to support petitioner, her two children, her mother, and her husband. During the years involved, petitioner and her husband had joint checking accounts in the following banks: Community Bank, Napoleon, Ohio
*180 First State Savings Bank, Morenci, Michigan
Farmers State Bank, Lyons, Ohio
Holgate State Bank, Holgate, Ohio
Toledo Trust Company, Toledo, Ohio
Petitioner occasionally wrote checks for small items on the above accounts, when directed to by her husband. Petitioner had no safety deposit boxes. Improvements to Parcel 3 between 1935 and 1947 amounted to $3,739.14. Improvements to Parcel 2 between 1938 and 1948 amounted to $3,306.48. Parcel 1 was improved to the extent of $113.55 between 1944 and 1948. The source of money for these improvements was income from the 3 farms. Taxes and insurance on the farms were paid by petitioner's husband from farm income. Sometime around 1948, petitioner's husband, Thomas B. Grayson, listed the 3 parcels of real estate with a real estate broker of Lyons, Ohio, who subsequently arranged for the sale of the properties. Parcel 1 was conveyed by petitioner and her husband to the purchaser by deed dated April 24, 1948. The consideration and expenses of the transaction were as follows: Revenue stamp attached was
$ 6.60
The consideration was
6,000.00
Commission of real estate broker for
finding buyer
$276.00
Abstract expense
41.00
Revenue stamps on deed
6.60
$323.60
*181 On April 24, 1948, petitioner's mother gave her a quitclaim deed for Parcel 2, thus releasing her life estate. Parcel 2 was conveyed by petitioner and her husband to the purchasers by deed dated July 19, 1948. The consideration and expenses of the transaction were as follows: Actual selling price
$25,000.00
Commission of real estate broker for
finding buyer
$1,000.00
Revenue stamps on deed
24.20
Attorney fee, drawing deed
3.00
Abstract and title work
32.75
$1,059.95
Parcel 3 was conveyed by petitioner and her husband to the purchaser by deed dated April 12, 1948. Payment for this property was by a $14,000 check, a part of which served as partial consideration for an additional 60-acre tract of land purchased the same day from Thomas B. Grayson, individually. Petitioner had no interest in this 60-acre tract which had been acquired by her husband in 1943. The expenses incurred in the sale of Parcel 3 were as follows: Commission of real estate broker for
finding buyer
$700.00
Revenue stamps
15.50
Fulton County, Ohio, revenue stamps
8.11
Abstract and title work
37.75
$761.36
The sales of Parcels 1, 2 and 3 in *182 1948 resulted in long-term capital gains, which petitioner concedes are taxable to her. On April 26, 1948, the purchaser gave to Thomas B. Grayson, personally, a mortgage securing a note for $11,700, as security for tracts 1 and 3. Thomas B. Grayson sold this mortgage note to the Community Bank in Napoleon, Ohio, for approximately $11,700, which amount was deposited in a new checking account in the names Thomas B. Grayson or Agnes W. Grayson. Thomas B. Grayson took a portion of the proceeds of the sale of the 3 properties and invested it in the purchase of a drug store, fixtures and stock of merchandise located in the village of Holgate, Ohio. He took title to the building on January 27, 1949 in the name of Thomas B. Grayson and Agnes W. Grayson. Subsequently, on the 24th of May 1950, he conveyed his half interest in the building to petitioner, after she had protested to him that it should be all in her name. Thomas B. Grayson was a registered pharmacist, and he operated the drug store during 1949. The sales tax license was in his name and in 1950 he filed a county return of taxable property which listed only himself as the owner of the business. Petitioner sometimes assisted *183 her husband by cleaning the store and by substituting as clerk and cashier when he had to be absent for a short time. Neither petitioner nor her husband at any time filed any income tax returns. In March 1952, a warrant was issued for the arrest of petitioner on a charge of willful failure to file an income tax return for the year 1948. She was tried and convicted by the United States District Court in the Northern District of Ohio and placed on probation for one year. Petitioner knew nothing about her income tax trouble until she was arrested. She was never contacted by the respondent's agents and asked for records and data. In 1952, Thomas B. Grayson was charged with willfully failing to file income tax returns with the collector of internal revenue for the years 1948 and 1949. He filed to Canada after he was indicted by a grand jury. Petitioner did not join her husband in Canada and did not leave the jurisdiction of the Court. Petitioner's husband subsequently returned to the United States, was tried on the criminal charge pending against him in the United States District Court at Toledo, Ohio, and was convicted. Petitioner is not now living with her husband, Thomas B. Grayson, *184 and has not lived with him since the spring of 1952. In May 1952, petitioner filed a petition with the Court of Common Pleas for Henry County alleging that her husband had received certain sums of money from the sale of several tracts of land which he had used to make divers investments in his own name with the understanding that he was to receive and hold such money and property in trust for her use and benefit. Respondent, as the result of an investigation by an internal revenue agent and a special agent, determined a joint income tax liability for petitioner and her husband on the basis of an increase in net worth during the years involved, plus estimated living expenses, with an adjustment for long-term capital gains. The net worth schedule which the agents compiled is as follows: 12-31-41
12-31-42
12-31-43
12-31-44
12-31-45
Assets: Cash on Hand
Bank Accounts
$ 1,106.66
$ 648.07
$ 204.93
Stocks and Bonds
$ 3,783.20
$ 3,783.20
5,946.66
8,581.20
21,864.54
Merchandise Inventory
Automobiles
Store Furniture &
Fixtures
Real Estate
10,500.00
10,500.00
14,000.00
14,000.00
14,000.00
Total Assets
$14,283.20
$14,283.20
$21,053.32
$23,229.27
$36,069.47
Liabilities: Accounts Payable -
Stock Brokers
$ 539.74
$ 5,075.31
Loans & Mortgages
$ 2,000.00
2,800.00
2,600.00
Payable
Reserve for
Depreciation
Total Liabilities
$ 2,000.00
$ 3,339.74
$ 7,675.31
Net Worth at End of
$14,283.20
$14,283.20
$19,053.32
$19,889.53
$28,394.16
Year
Less: Net Worth End of
Preceding
Year
14,283.20
14,283.20
19,053.32
19,889.53
28,394.16
Increase in Net Worth
$ 4,770.12
$ 836.21
$ 8,504.63
$ 9,954.85
Add: Estimated Living
$ 4,000.00
4,000.00
4,000.00
4,000.00
4,000.00
Expenses
Deduct: Non-Taxable
Long-Term
Capital Gain
1,655.11
Indicated Adjusted
$ 4,000.00
$ 8,770.12
$ 4,836.21
$12,504.63
$12,299.74
Gross Income
Less: Standard
500.00
500.00
500.00
Personal Deduction
Indicated Net Income
$ 4,000.00
$ 8,770.12
$ 4,336.21
$12,004.63
$11,799.74
*185 12-31-46
12-31-47
12-31-48
12-31-49
Assets: Cash on Hand
$ 100.85
$ 1,285.12
Bank Accounts
$ 313.08
$ 176.00
2,190.29
3,561.40
Stocks and Bonds
33,235.93
44,049.66
120,214.56
138,356.04
Merchandise Inventory
11,242.45
Automobiles
4,116.89
4,116.89
Store Furniture &
1,500.00
Fixtures
Real Estate
14,000.00
14,000.00
16,000.00
24,500.00
Total Assets
$47,549.01
$58,225.66
$142,622.59
$184,561.90
Liabilities: Accounts Payable -
Stock Brokers
$ 6,428.74
$ 19,202.00
Loans & Mortgages
$ 9,200.00
$15,000.00
51,350.26
59,396.62
Payable
Reserve for
310.00
Depreciation
Total Liabilities
$ 9,200.00
$15,000.00
$ 57,779.00
$ 78,908.62
Net Worth at End of
$38,349.01
$43,225.66
$ 84,843.59
$105,653.28
Year
Less: Net Worth End of
Preceding
Year
38,349.01
43,225.66
84,843.59
Total
Increase in Net Worth
$ 4,876.65
$ 41,617.93
$ 20,809.69
$ 91,370.08
Add: Estimated Living
4,000.00
4,000.00
4,000.00
32,000.00
Expenses
Deduct: Non-Taxable
Long-Term
Capital Gain
20,192.55
388.66
(22,236.32)
Indicated Adjusted
$ 8,876.65
$ 25,425.38
$ 24,421.03
$101,133.76
Gross Income
Less: Standard
500.00
1,000.00
1,000.00
4,000.00
Personal Deduction
Indicated Net Income
$ 8,376.65
$ 24,425.38
$ 23,421.03
$ 97,133.76
*186 Title to the $3,500 piece of real estate added in 1943, to the automobile purchased in 1948, and to all of the stocks and bonds acquired over the years was solely in the husband's name. Petitioner had no experience in dealing with stocks and bonds. The liability was determined to be joint because of the intermingling of funds in joint bank accounts, the method of holding real estate and of operating the farms, investments of petitioner in her husband's name, the existence of some joint liabilities, and the absence of records showing any separation of income to the petitioner and her husband. The living expenses of petitioner and her husband, and the increase in their combined net worth, during the years involved, came from the following sources of income: 1942
Dividends
$ 226.99
Farm income
3,773.01
Total
$ 4,000.00
1943
Dividends
$ 291.90
Farm income
8,478.22
Total
$ 8,770.12
1944
Dividends
$ 419.64
Farm income
4,416.57
Total
$ 4,836.21
1945
Dividends
$ 744.92
Farm income
11,759.71
Total
$12,504.63
1946
Dividends
$ 1,500.75
Capital gains
3,310.22
Farm income
9,143.88
Total
$13,954.85
1947
Dividends
$ 2,318.57
Farm income
6,558.08
Total
$ 8,876.65
1948
Dividends
$ 4,735.06
Capital gains
40,385.10
Farm income
497.77
Total
$45,617.93
1949
Dividends
$ 6,988.20
Capital gains
777.32
Drug store income
17,044.17
Total
$24,809.69
*187 Petitioner received the following income attributable to the ownership of the 118 acres which she owned outright: Year
Amount
1942
$1,021.14
1943
1,799.33
1944
937.33
1945
2,495.77
1946
1,940.61
1947
1,391.82
1948
105.64
Petitioner had the following dividend income during the years 1948 and 1949: Year
Amount
1948
$ 844.09
1949
1,125.45
Petitioner's husband, Thomas B. Grayson, was in complete control of the drug store in Holgate during its operation in 1949. No part of the deficiency due from petitioner for any of the taxable years 1942 to 1949, inclusive, is due to fraud with intent to evade tax. Opinion A joint income tax liability for all of the years involved was determined against petitioner and her husband from increases in their combined net worth. Petitioner admits that she should have reported the gain on the sale of the 3 parcels of farm land in 1948, but insists that the remainder of the income should be attributed to her husband. Respondent's contention is that both petitioner and her husband "had taxable income which was so intermingled that it could not be segregated." See Joseph Calafato, 42 B.T.A. 881, *188 affd. (C.A. 3) 124 Fed. (2d) 187. Apart from the capital gains admitted as belonging to petitioner, the following sources for net worth increases appear from the record: (1) income from the operation of the 3 farms; (2) income from the operation of the drug store; (3) possible income from stocks and bonds; and (4) a possible gain on the sale of a fourth parcel of farm land. The stocks and bonds and the fourth parcel of farm land were in her husband's name individually. Unless they were acquired with her funds so as to give her an equitable interest, such income would be only the husband's. Harold G. Parker, 39 B.T.A. 423; James Nicholson, 32 B.T.A. 977, affd. (C.A. 8) 90 Fed. (2d) 978. See also Clay H. Brock, 22 T.C. 284 (May 13, 1954). No contention has been made that petitioner and her husband were engaged in a business partnership or a joint venture. Nor would the evidence have sustained such a contention. See Roland P. Place, 17 T.C. 199, affd. (C.A. 6) 199 Fed. (2d) 373, certiorari denied 344 U.S. 927; Denison v. Commissioner, ( C.A. 6) 180 Fed. (2d) 938, certiorari *189 denied 340 U.S. 817; Commissioner v. Culbertson, 337 U.S. 733. The income from the drug store business should on the present facts be attributed to petitioner's husband. Only he was a registered pharmacist. He managed the store and had complete control over it. Neither the joint ownership of the property nor the slight assistance rendered by petitioner in cleaning the store and substituting for her husband when he had to be away is sufficient to shift the burden of taxation. Albert Nelson, 6 T.C. 764. See Robert E. Werner, 7 T.C. 39. We think, however, a different approach must be taken to a part of the dividend income for 1948 and 1949 and to the farm income. Petitioner later laid claim to the securities from which this portion of the dividends arose, and some part of the farm property was owned exclusively by petitioner during each of the years excepting 1949. In our findings we have set forth the amounts chargeable to petitioner. Income is taxable to the person who earns it or to the person who owns the property which produces it. Lucas v. Earl, 281 U.S. 111; Helvering v. Horst, 311 U.S. 112. Although *190 the evidence is meager we think it adequately appears that a part of the farm income was attributable to the husband's services and a part to the farm property, except for the capital gains all of which petitioner concedes. Having been given no basis in the record for any more accurate allocation, see Cohan v. Commissioner, (C.A. 2) 39 Fed. (2d) 540, we have concluded that the income should be presumed to have been derived equally from these two sources. Of the 278 acres owned by petitioner, her husband, or her mother - as life tenant -, 118 belonged to petitioner. We have accordingly allocated the one-half of the farm income derived from the land to petitioner on the basis of 118/278 on the assumption [1] that each acre was as productive as every other acre since there is also no specific evidence on this point. The amount of income derived from farming operations was arrived at in the first instance by attributing to the other property owned, as shown by the net worth statements in our findings, an appropriate proportion of the total income. The amount of *191 income from farming operations attributable to petitioner as distinguished from that attributable to her husband, or to her mother, is incorporated in our ultimate finding as to her income from this source for each year in controversy as is her presumed income from securities. We have reached the foregoing conclusion as to the deficiencies because of the burden of proof. The case of Joseph Calafato, supra, is distinguishable on its facts. The evidence does not satisfy us that applying the Cohan rule petition did not have the amounts of income as to which we have made the findings. The opposite, however, applies with respect to the fraud issue where respondent has the burden. See Nathan Cohen v. Secretary of War, 7 T.C. 1002 [4 CCF [*] 60,170]. Notwithstanding the verdict of guilty rendered against petitioner in the criminal trial for failing to file returns, we think respondent has fallen short of sustaining his burden of proof that petitioner was guilty of fraud. There is in the first place no requirement that customary account books be kept with respect to income from property devoted to farming. Regulations 118, sec. 39.54-1; Regulations 111, sec. *192 29.54-1. Even if there were, the present evidence indicates that it was the husband who should have maintained records and although petitioner may have been under a legal duty to file returns, we think it no evidence of fraud that she should have relied upon him to carry out whatever obligation rested upon the family, both as to keeping accounts and as to filing returns. See Walter M. Ferguson, Jr., 14 T.C. 846, Acq. 1953-1 C.B. 1. This is not a case where joint returns were filed, some items of income belonged to the wife, and the return was fraudulent. Cf. Myrna S. Howell, 10 T.C. 859, affd. (C.A. 6) 175 Fed. (2d) 240; W. L. Kann, 18 T.C. 1032, affd. (C.A. 3) 210 Fed. (2d) 247, certiorari denied 347 U.S. 967 (May 17, 1954). Since it is the failure to file any returns at all upon which the conclusion of fraudulent intent would be based, and since we think petitioner's reliance on her husband in this respect was not unreasonable, we disapprove the addition to tax on the ground of fraud. Petitioner does not now contend that her failure to file returns within the time prescribed by law was *193 due to reasonable cause and not to willful neglect. We think, under these circumstances, the delinquency penalty and the penalty for failure to file a declaration of estimated tax must be sustained. Secs. 291(a), 294(d), I.R.C.
Decision will be entered under Rule 50. Footnotes
1. Since the 60-acre tract was not acquired by the husband until 1943, the allocation is 118/218 for 1942.↩